STATE of Wisconsin, Plaintiff-Respondent,

v.

David William JACKSON, Defendant-Appellant.

Supreme Court

*Nos. 87–1374–CR, 87–1375–CR. Argued November 3, 1988.—
Decided January 25, 1989.*

(Also reported in 434 N.W.2d 386.)

For the defendant-appellant there were briefs and oral argument by *Glenn L. Cushing,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

WILLIAM A. BABLITCH, J.  The issue before us is whether the flight of an individual upon sighting the police can provide reasonable suspicion justifying

a temporary investigative stop. We conclude that the totality of the circumstances here led the officer to reasonably suspect that David William Jackson (Jackson) was committing, was about to commit, or had committed a crime. Accordingly, the officer was justified in temporarily stopping Jackson, thereby freezing the situation in order to further investigate.

While patrolling in the city of Racine at approximately 2:00 a.m. on October 30, 1986, Officer James Dobbs of the Racine Police Department responded to a call regarding a possible stabbing. The officer testified that as the squad car approached the area, "a person ran from me." Officer Dobbs left the squad car and pursued him on foot. The individual eventually evaded the officer, but only after running through yards and jumping fences.

After losing sight of the person, the officer returned to the squad car and learned that the stabbing report was false. However, another officer who arrived at the scene informed officer Dobbs that the person who ran from him "had warrants," and that was the reason he fled.

Approximately one-half hour later, officer Dobbs observed an individual, accompanied by two other men, whose clothing and physical description matched the person who fled. Officer Dobbs testified that he stopped this person, later identified as Jackson, "to find out if he was the party that I had chased and possibly had warrants." It is this stop that is the basis of the appeal.

Officer Dobbs then noticed that Jackson had fresh blood stains on his jeans and cuts on his right hand. Dobbs testified that this observation corroborated his suspicion that Jackson was the individual who fled, as

"he could have started bleeding from jumping fences through the yards as I was chasing him."

Officer Dobbs asked for identification. Jackson gave the false name of William Jones. Officer Dobbs contacted the record bureau to get a description of the person who allegedly had warrants outstanding on him. The description did not match Jackson, and he was released.

Shortly after releasing Jackson, officer Dobbs was advised to be on the lookout for individuals in the neighborhood who were possible suspects in a school burglary. He was informed that one or more of them might be bleeding. The officer went to a nearby convenience store to which Jackson and his companions had indicated they were going after being released. He found the individuals at the store and contacted an officer investigating the burglary, who then came to the convenience store and brought with him shoeprints found on papers at the school. The shoeprints matched that of Jackson and one of his companions. The third individual's shoes did not match the shoeprints but a bag he was carrying contained a brown telephone. The officers radioed the school and were informed that the telephone matched the description of a phone stolen in the burglary. Jackson and his companions were then arrested for the burglary of the school.

Meanwhile, an officer who took a report of an armed robbery elsewhere in town involving three males was advised that three males had been taken into custody for the school burglary. The officer went to the scene of the arrest, viewed the individuals, and concluded that they matched the description of the robbers. Jackson and his companions were taken to the robbery victim. He positively identified Jackson

and one of the others as his assailants. With respect to Jackson's third companion, the victim stated that it was possible he was the third party involved in the robbery, but he was not certain. The three were then taken to police headquarters. At some point, the officers also found a knife in Jackson's back pocket. The robbery victim reported that one of the accomplices had a knife.

Jackson moved to suppress the identification and all of the physical evidence on the ground that his initial stop, which was about one-half hour after he fled from the officer, was improper. The trial judge denied the motions. Jackson then pleaded no contest on reduced charges of attempted robbery as party to a crime, and burglary as party to a crime. He was sentenced to concurrent five years imprisonment on each count. We accepted certification of the consolidated appeals pursuant to sec. (Rule) 809.61, Stats.

On appeal, Jackson states the issue as follows:

> The state failed to meet its burden of proving that the officer who stopped the defendant had "specific and articulable facts" available to him which amount to "reasonable suspicion" of criminal activity and the stop of the defendant was therefore unconstitutional requiring the suppression of all observations, evidence, and identifications which were the fruit of that stop. Defendant's brief at 7. (Capitalization deleted.)

The state argues: 1) the officer could reasonably suspect the defendant of some present or past unlawful activity simply from his flight from the officer's approach to what the officer then believed to be the scene of a stabbing; 2) the fellow officer's report that the individual who had fled from the scene of the

alleged stabbing was wanted on some outstanding warrants justified the stop; 3) the combination of the two was sufficient.

In reviewing a denial of a suppression motion, we will uphold the trial court's findings of fact unless they are against the great weight and clear preponderance of the evidence. Whether those facts satisfy the constitutional requirement of reasonableness presents a question of law, and therefore we are not bound by the lower court's decisions on that issue. *See State v. Guzy,* 139 Wis. 2d 663, 671, 407 N.W.2d 548 (1987).

Jackson acknowledges that the validity of an initial stop turns on whether the officer can point to specific and articulable facts, taken together with rational inferences from those facts, which lead to a reasonable suspicion that criminal activity is possibly afoot. However, Jackson insists that flight at the appearance of the police cannot by itself provide the articulable suspicion necessary to warrant an investigative stop, particularly when the flight is not from the scene of a crime. Jackson would have this court establish a rule that suspicion occasioned by an individual's flight from police, without more, is unreasonable *per se.* We decline to do so. We hold that flight from the police can, under the totality of circumstances present, justify a warrantless investigative stop.

In *Terry v. Ohio,* 392 U.S. 1, 22 (1968), the United States Supreme Court recognized that although an investigative stop is technically a "seizure" under the fourth amendment, a police officer may in appropriate circumstances detain a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. The *Terry* court

upheld the legality of an investigative stop by a police officer who observed the defendant and another man repeatedly walk back and forth in front of a store window at 2:30 in the afternoon, and then confer with each other. The officer suspected the two of contemplating a robbery and stopped them to investigate further. The court concluded that the temporary stop was permissible because specific and articulable facts were available to the officer at the moment of the seizure which would "'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Id.*

In *Adams v. Williams,* 407 U.S. 143 (1972), the court reiterated the *Terry* rationale, and stated:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Id.* at 145–46. (Citations omitted.)

In *State v. Chambers,* 55 Wis. 2d 289, 294, 198 N.W.2d 377 (1972), we adopted the position of the United States Supreme Court that an officer may in appropriate circumstances temporarily detain a suspicious person for investigative questioning. Our legislature also codified the constitutional standard established in *Terry* in sec. 968.24, Stats., cited in full be-

low.[1] We have recognized that sec. 968.24 is the "statutory expression" of the *Terry* requirements, and in interpreting the scope of the statute, resort must be made to *Terry* and the cases following it. *State v. Williamson*, 113 Wis. 2d 389, 399–400, 335 N.W.2d 814, *cert. denied*, 464 U.S. 1018 (1983).

· Recently, in *Guzy*, 139 Wis. 2d at 675–76, we stressed that the focus of a *Terry* type stop is on reasonableness. It is a common sense question, which strikes a balance between the interests of society in solving crime and the members of that society to be free from unreasonable intrusions. The essential question is whether the action of the law enforcement officer was reasonable under all the facts and circumstances present. *Id.* at 679.

We have never determined the precise issue whether flight at the appearance of the police can provide the reasonable suspicion necessary to justify a temporary stop. In somewhat analogous situations to flight, we have upheld investigative stops when individuals made repeated efforts to avoid police, despite the fact that the activity was unrelated to reported or observed criminal activity. For instance, in *State v. Williamson*, 58 Wis. 2d 514, 206 N.W.2d 613 (1973), we concluded that an investigative stop was justified after the defendant drove a circuitous route in downtown Milwaukee, and pulled his car over to the curb on

[1]**968.24 Temporary questioning without arrest.** After having identified himself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime, and may demand the name and address of the person and an explanation of his conduct. Such detention and temporary questioning shall be conducted in the vicinity where the person was stopped.

several occasions in response to the approach of a marked police car. We stated that "it was entirely reasonable for the police officers to stop defendant's car for the purpose of interrogating the driver as to who he was and why he had driven the car as he had." *Id.* at 518. Similarly, in *State v. Williamson,* 113 Wis. 2d at 401–02, while sitting in their squad car at 2:00 a.m. writing out a traffic citation, officers noticed two men exit a yard and begin walking toward a tavern. As each man recognized the squad car, they appeared startled and stared at it. One of the men was asked if he had ever been convicted of a crime, and he responded that he had been convicted of carrying a gun. He then turned and started to walk away from the car. The officer stopped him and asked if he had any weapons on his person. When he did not respond, the officer performed a pat-down search and retrieved a loaded pistol from his jacket. We concluded that at the time of the stop, a person of reasonable caution was justified in the belief that criminal activity was possibly afoot, and the officer was therefore justified in briefly stopping Williamson to maintain the status quo while obtaining more information.

Other jurisdictions presented with the issue have reached the conclusion that flight from the police can justify a *Terry* stop. In *People v. Tribett,* 424 N.E.2d 688 (Ill. App. 1981), police in a marked car at 10:30 p.m. noticed the defendant six or seven houses away carrying a brown bag. When the squad car came within ten or twenty feet of the defendant, he suddenly darted through an alley into a parking lot. The court concluded that although the defendant's sudden running into the alley was not a crime, it certainly was unusual. From the officers' viewpoint, the defendant's conduct was at least reasonably suspicious to

justify inquiry into his sudden flight. *Id.* at 694. In *United States v. Jackson,* 741 F.2d 223, 224 (8th Cir. 1984), the court found reasonable suspicion for an investigative stop when police on routine patrol drove into an alley and observed two men flee while yelling, "'It's the police, man, run.'" *Id.* at 224.

Professor LaFave also suggests that flight in and of itself may justify an investigative stop. "[A]s the Supreme Court acknowledged in *Peters v. New York,* [392 U.S. 40, 66 (1968)], 'deliberately furtive actions and flight at the approach of ... law officers are strong indicia of *mens rea.*'" 3 W. La Fave, *Search and Seizure,* sec. 9.3(c), p. 450 (2nd Ed. 1987).

We have stated that an assessment as to whether a stop is reasonable must take into account the facts and circumstances of each individual case. As we said in *Guzy,* 139 Wis. 2d at 680, "[t]he ultimate question is, given the facts and circumstances present, does the important societal interest in solving crime and bringing offenders to justice reasonably justify the specific intrusion on personal security, i.e., the stop?" This approach presumes a contextual evaluation, varying not only with the particular police conduct at issue, but also with the facts and circumstances in which the conduct occurs.

Based on our prior decisions, as well as other authorities cited, we concluded that the issue of whether flight from a police officer justifies a warrantless investigative stop should be viewed in the context of the circumstances presented. We therefore hold that flight from the police can, dependent on the totality of circumstances present, justify a warrantless investigative stop. The relevant inquiry is whether the totality of the circumstances creates a reasonable

suspicion that a person was committing, had committed, or was about to commit a crime.

The question of what constitutes reasonable suspicion is a common sense test. Under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience?

Examining the facts of the present case, along with all reasonable inferences that may be drawn from them, Jackson's flight upon observing the squad car afforded officer Dobbs reasonable suspicion justifying the subsequent stop. Officer Dobbs testified that he was on duty and responding to a report of a possible stabbing when he observed an individual flee from him at approximately 2:00 a.m. Although the officer left his squad car and pursued on foot, the individual eventually evaded the officer by running through yards and jumping fences. Under the totality of these circumstances, we consider it entirely reasonable for officer Dobbs to form a suspicion that Jackson was committing, was about to commit, or had committed a crime. When the officer stopped Jackson and his companions one-half hour later, the reasonable suspicion that focused on Jackson at the time of the chase provided grounds for demanding identification and an explanation of his conduct. The officer's discovery during the interim that the reported stabbing was false did nothing to dissipate the reasonableness of the officer's suspicion.

Although the officer in this case did not directly observe the commission of a crime, and the reported stabbing turned out to be false, it would defy common sense to conclude that fleeing an officer to the point of running through yards and jumping fences at 2:00

a.m. does not amount to suspicious circumstances affording reasonable grounds to justify a request for identification and an inquiry into the sudden flight. Indeed, had officer Dobbs not stopped Jackson at the time he did, he might well be subject to justifiable criticism for failing to do so.

■

Jackson suggests that his actions do not necessarily imply wrongful conduct, and that the record allows other equally reasonable inferences of an innocent nature. Doubtless, many innocent explanations for Jackson's conduct could be hypothesized, but suspicious activity by its very nature is ambiguous. Indeed, the principal function of the investigative stop is to quickly resolve the ambiguity and establish whether the suspect's activity is legal or illegal. In this regard, LaFave points out that the suspects in *Terry* "might have been casing the store for a robbery, or they might have been window-shopping or impatiently waiting for a friend in the store." 3 W. La Fave, *Search and Seizure,* sec. 9.2(c), at 357–58. We conclude that if any reasonable suspicion of past, present, or future criminal conduct can be drawn from the circumstances, notwithstanding the existence of other inferences that can be drawn, officers have the right to temporarily freeze the situation in order to investigate further.

Because we conclude that the stop was proper based on the facts and circumstances surrounding Jackson's flight, it is unnecessary for us to decide the alternative bases as put forth by the state to justify the stop. Accordingly, we decline to reach the issue concerning whether officer Dobbs properly relied upon the information received from the other officer regarding outstanding warrants.

*By the Court.*—The judgments of the circuit court are affirmed.

SHIRLEY S. ABRAHAMSON, J. (concurring). The issue is whether a person's flight, in and of itself, on observing law enforcement officers or a squad car—that is "police avoidance behavior" alone—justifies an investigative stop. The majority opinion states that the validity of an investigative stop depends on the circumstances of the flight.

In this case, the circumstances of the flight were the time (2:00 A.M.) and the defendant's "running through yards and jumping fences." Majority opinion at page 834. The majority recognizes that no other circumstances were present in this case; the stabbing report and the purported warrants were not implicated in the stop in this case.

Accepting *State v. Williamson,* 113 Wis. 2d 389, 335 N.W.2d 814 (1983), in which Chief Justice Beilfuss, Justice Heffernan and I dissented, as the law of the state and this case as a natural outgrowth of *Williamson,* I conclude that the implication of this case is that flight in and of itself justifies a stop for investigation. I would prefer that the majority state this implication as a clear and simple rule for the benefit of law enforcement officers who are called upon to make investigative stops and for the benefit of the circuit courts and courts of appeal who must review the validity of the stops. Framing the rule in terms of the totality of the circumstances of the flight, as the majority does, without an analysis of the nature of the circumstances that may or may not justify a stop, is not helpful to law enforcement officers and the courts. For the reasons set forth, I concur.