STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

David Paul ANDERSON, Defendant-Appellant.

Supreme Court

*No. 88-0692-CR. Argued January 4, 1990.—Decided May 9, 1990.*

(Also reported in 454 N.W.2d 763.)

77

For the plaintiff-respondent-petitioner the cause was argued by *Christopher G. Wren,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Patricia Flood,* assistant state public defender.

WILLIAM A. BABLITCH, J. The issue presented is whether an individual's flight upon seeing the police is suspicious behavior sufficient in and of itself to justify a temporary investigative stop by the police. The State of Wisconsin (State) seeks review, arguing that flight from the police is sufficient to justify a stop. Because we conclude that flight from the police is a strong indication of "mens rea," i.e. a guilty mind or a guilty purpose, we conclude that behavior which evinces in the mind of a reasonable police officer an intent to flee from the police is suspicious behavior sufficient to justify a temporary investigative stop. Accordingly, we reverse the decision of the court of appeals.

The essential facts are as follows: Officers Thomas Bushey and Charles Nicoud of the City of Elkhorn Police Department were patrolling an alley in the city of Elkhorn on May 28, 1985, at approximately 2:00 a.m. when David Paul Anderson's (Anderson) Chevette approached their squad car. Officer Bushey had previ-

ously received complaints that Anderson's vehicle was parking in private business stalls in the community. Although Officer Bushey ran a license plate check on Anderson's vehicle a week or two earlier, the officer made no prior attempts to contact Anderson concerning the problem.

Upon recognizing the vehicle as the one about which complaints were received, Officer Bushey decided it was an opportune time to "talk to the [person] who was driving the car . . . to advise him about the complaints that his car had been parked in private stalls." Officer Bushey pulled the squad car over to allow the vehicle to park behind a restaurant which abutted the alley. Officer Bushey knew that the person who normally drove the car lived in an apartment above the restaurant, and he had previously seen this car parked at that location.

However, when Anderson sighted the squad car containing the two officers, he turned south into an adjoining alley, attaining a speed of approximately ten to fifteen miles per hour. He then turned onto city streets, attaining a speed of approximately thirty miles per hour. The officers followed and activated their flashing lights. According to Officer Bushey's testimony, Anderson was stopped because of "the parking situation and the suspicious behavior of his driving."

Anderson stopped his vehicle immediately upon the officers activating their flashing lights. After the vehicle was stopped, however, the officers noticed Anderson's arms "feverishly moving as to try to hide something underneath the seat or pull something out from underneath the seat." As the officers approached on each side of the vehicle, Anderson's arms were still moving as if trying to hide something. Officer Bushey ordered Anderson to place his hands on the steering wheel, then

ordered Anderson out of the car and handcuffed him. Meanwhile, Officer Nicoud saw a leather object sticking out from beneath the seat. Officer Nicoud then searched the vehicle and found the leather object was an empty holster. He then discovered a loaded .22 caliber revolver, a double-edged survival knife, and two steak knives. A pat-down search of Anderson revealed a pair of handcuffs, two multi-functional knives, and a box of .22 caliber shells.

On May 31, 1985, a complaint was issued charging Anderson with one count of possession of a firearm by a felon, and one count of carrying a concealed weapon, contrary to secs. 941.29(1), (2), and 941.23, Stats. Anderson moved to dismiss the complaint and suppress all the evidence on the basis of an illegal stop. The trial court denied the motion, concluding that the stop of Anderson's vehicle was proper under *Terry v. Ohio,* 392 U.S. 1 (1968), and sec. 968.24. Anderson then entered *Alford* pleas to the charges and appealed.

The court of appeals reversed the judgment of conviction, concluding the stop was improper under *Terry* or sec. 968.24, Stats. *See State v. Anderson,* 142 Wis. 2d 162, 417 N.W.2d 411 (Ct. App. 1987) *(Anderson I).* However, the court of appeals remanded the case for further proceedings to determine whether the police were performing a bona fide community caretaker function when they stopped Anderson's vehicle. After numerous proceedings not relevant to the issue before us, the court of appeals issued a decision, *State v. Anderson,* 149 Wis. 2d 663, 439 N.W.2d 840 (Ct. App. 1989) *(Anderson II),* which held that the stop was improper either under community caretaker analysis, *Terry* principles, or our intervening decision in *State v. Baudhuin,* 141 Wis. 2d 642, 416 N.W.2d 60 (1987). We accepted review on June 6, 1989.

81

We reverse the decision of the court of appeals. We conclude that Anderson's conduct constituted flight from the police which, under *Terry* and sec. 968.24 Stats, was sufficient in and of itself to justify a temporary stop to further investigate.

## I.

In *State v. Jackson,* 147 Wis. 2d 824, 834, 434 N.W.2d 386 (1989), we concluded that flight from the police, under the facts presented along with all reasonable inferences which could be drawn from them, provided reasonable suspicion justifying a temporary investigative stop. The facts in *Jackson* involved an individual fleeing on foot at the approach of a squad car at 2:00 a.m. in the city of Racine. The officer left the squad car and ran after him. The person eventually evaded the officer after running through yards and jumping fences. The officer returned to his squad car where he was informed by another officer that the person who ran from him "had warrants" and that was the reason he fled. Approximately one-half hour later, the officer stopped a person whose clothing and physical description matched the person who fled. As a result of the stop, the officer observed evidence that later led to an arrest for armed robbery and burglary. *Id.* at 826–28.

Jackson sought to suppress the evidence on the grounds that the stop was improper. We declined to adopt the rule urged by Jackson that suspicion based on an individual's flight from police, without more, is unreasonable *per se.* We held that "flight from the police can, dependent on the totality of circumstances present, justify a warrantless investigative stop." *Id.* at 833. Because of the circumstances presented, i.e., the nature of the flight consisting of running through yards

and jumping fences, as well as the officer's belief at the time of the stop that the man he chased had outstanding warrants against him, we did not need to reach, and did not reach, the issue of whether flight from the police in and of itself is suspicious behavior sufficient to justify a temporary investigative stop under *Terry* or sec. 968.24, Stats. This case presents that precise issue.

In *State v. Chambers,* 55 Wis. 2d 289, 294, 198 N.W.2d 377 (1972), we adopted the position expressed in *Terry* that temporary stops are permissible when, at the time of the stop, an officer possesses "specific and articulable" facts which would warrant a reasonable belief that the action taken was appropriate. Our legislature also codified the constitutional standard established in *Terry* in sec. 968.24, Stats, quoted in full below.[1] We have recognized that sec. 968.24, is the "statutory expression" of the *Terry* rule, and in interpreting the scope of the statute, resort must be made to *Terry* and the cases following it. *Jackson,* 147 Wis. 2d at 831.

We emphasized in *Jackson* that the fundamental focus of the fourth amendment, and sec. 968.24, Stats, is on reasonableness. The question of what constitutes reasonableness is a common sense test. What is reasonable under the circumstances? What would a reasonable police officer reasonably suspect in light of his or her

---

[1] **968.24 Temporary questioning without arrest.** After having identified himself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime, and may demand the name and address of the person and an explanation of his conduct. Such detention and temporary questioning shall be conducted in the vicinity where the person was stopped.

training and experience? *Id.* at 834. What should a reasonable police officer do?

■

We also stressed that police officers are not required to rule out the possibility of innocent behavior before initiating a brief stop. In this regard, we pointed out that the suspects in *Terry* " 'might have been casing the store for a robbery, or they might have been window-shopping or impatiently waiting for a friend in the store.' " *Jackson,* 147 Wis. 2d at 835 (quoting 3 W. LaFave, *Search and Seizure,* sec. 9.2(c), at 357–58. We noted that suspicious conduct by its very nature is ambiguous, and the principle function of the investigative stop is to quickly resolve that ambiguity. Therefore, if any reasonable inference of wrongful conduct can be objectively discerned, notwithstanding the existence of other innocent inferences that could be drawn, the officers have the right to temporarily detain the individual for the purpose of inquiry. *Jackson,* 147 Wis. 2d at 835.

■

Flight at the sight of police is undeniably suspicious behavior. Although many innocent explanations could be hypothesized as the reason for the flight, a reasonable police officer who is charged with enforcing the law as well as maintaining peace and order cannot ignore the inference that criminal activity may well be afoot. Although it does not rise to a level of probable cause, flight at the sight of a police officer certainly gives rise to a reasonable suspicion that all is not well. Under these circumstances, "[i]t would have been poor police work indeed for an officer . . . to have failed to investigate this behavior further." *Terry,* 392 U.S. at 23.

There was ample objective evidence of flight in the present case. For example, when questioned about his

purpose in following the Chevette, Sergeant Bushey testified:

> A Initially, I had intended to talk to him about parking behind the businesses on South Wisconsin Street in the private parking areas. When he took off on us, it appeared he was trying to avoid us.
> Q What makes you say that?
> A The rapid manner in which he took off. I know that he parks back there. He was living above the Elk Restaurant. He was coming through the alley. It appeared to me that he was coming through to park for the evening, but when he saw the squad, it appeared like he was taking off.

On the basis of the testimony presented at the hearing, Judge Carlson found that Anderson was attempting to evade the officers. This finding is not clearly erroneous. Section 805.17(2), Stats. The concurrence, sharply disputing that Anderson's conduct constituted flight, states that "[t]he trial judge did not conclude that Anderson's conduct constituted 'flight' from the police, nor that his avoidance of the police in and of itself was suspicious behavior." Concurring opinion at 91. The concurrence says "[i]t is inappropriate and usurpative for this court to transmute the trial judge's finding of fact that the defendant avoided contact with the police into a finding that the defendant was 'fleeing' from the police." Concurring opinion at 91.

We disagree with the concurrence. The statements of the trial court judge amply demonstrate his conclusion that Anderson's conduct constituted flight.

The trial court in its findings stated, "the vehicle proceeded in a very hastey (sic) fashion away from the officers after it drove approximately right by the officer's vehicle . . . this was 2:00 in the morning and the car is speeding away from this area . . . I think it would cer-

tainly be suspicious that he speed (sic) away from the area in the fashion that he was doing . . .."

Although the trial judge did not utilize the precise term "flight" in concluding that the stop was reasonable under *Terry,* one ponders what conduct the concurrence would consider "flight" if not the above described. Judge Carlson then concluded that the situation "called for investigation" and that the officers' handling of the situation was "appropriate police work . . . appropriate police conduct." We agree with this commonsense determination.

We further note that nothing in the fourth amendment, or sec. 968.24, Stats, requires that a police officer's suspicions relate to particular criminal activity. Indeed, the stop in *Jackson* was itself unrelated to any specific reported or observed criminal activity, as were many of the cases relied upon in the *Jackson* opinion. *See, e.g., State v. Williamson,* 58 Wis. 2d 514, 206 N.W.2d 613 (1973) (stop upheld where defendant drove a circuitous route in downtown Milwaukee and pulled his car over to the curb in response to approach of marked squad car); *State v. Williamson,* 113 Wis. 2d 389, 335 N.W.2d 814, *cert. denied,* 464 U.S. 1018 (1983) (stop upheld where two men appeared startled and stared at police officers sitting in their squad car and then turned and walked away); *United States v. Jackson,* 741 F.2d 223, 224 (8th Cir. 1984) (stop upheld when police on routine patrol drove into an alley and observed two men flee while yelling, " '[i]t's the police, man, run.' "); *see also, Michigan v. Chesternut,* 486 U.S. at 576 (Kennedy, concurring, joined by Scalia) ("respondent's unprovoked flight gave the police ample cause to stop him.").

We reiterate that the fundamental focus of the fourth amendment, and sec. 968.24, Stats, is on reasonableness. *Jackson,* 147 Wis. 2d at 831 (citing *State v. Guzy,* 139 Wis. 2d 663, 675–76, 407 N.W.2d 548, *cert. denied,* 484 U.S. 979 (1987). The question is whether the actions of the law enforcement officer were reasonable under the circumstances. *Guzy,* 139 Wis. 2d at 679. It is a commonsense question, which strikes a balance between individual privacy and the societal interest in allowing the police a reasonable scope of action in discharging their responsibility. *See Id.* at 675–76; *Bies v. State,* 76 Wis. 2d 457, 472, 251 N.W.2d 461 (1977).

We conclude that a proper balance is struck under the fourth amendment, and sec. 968.24, Stats, by allowing police officers the ability to temporarily stop an individual engaging in flight upon sighting law enforcement officers or a squad car. Indeed, as we stated in *Jackson,* "it would defy common sense" to conclude that fleeing from the police does not amount to suspicious circumstances affording reasonable grounds to justify at least a demand for identification and an inquiry into the sudden flight. *See Jackson,* 147 Wis. 2d at 834–35.

Counsel for Anderson, at oral argument, agreed that flight from the police is a strong indication of "mens rea," a guilty mind or a guilty purpose. Nevertheless, Anderson argues that police should be powerless to act when an individual upon sighting the police takes steps to avoid them by fleeing from their presence. We do not agree. In fact, police would be rightly criticized for failure to act under such circumstances.

As we stated in *Jackson,* other jurisdictions presented with the issue have reached the conclusion that flight from the police can justify a *Terry* stop. *See, People v. Tribett,* 424 N.E.2d 688 (Ill. App. 1981);

*United States v. Jackson,* 741 F.2d at 224. In addition, we also pointed out that Professor LaFave suggests that flight in and of itself may justify an investigative stop inasmuch as flight at the approach of law officers are "strong indicia of 'mens rea.' 3 W. LaFave, *Search and Seizure,* sec. 9.3(c), p. 450 (2nd Ed. 1987).

A stop under these circumstances does not represent the "inchoate and unparticularized suspicion or 'hunch' . . ." condemned in *Terry. See Terry,* 392 U.S. at 27. Rather, it furnishes an affirmative answer to the question in *Terry:* whether a reasonably prudent person in the circumstances of the officer would be warranted in the belief that the action taken was appropriate. *Id.* at 21–22.

Accordingly, we hold that behavior which evinces in the mind of a reasonable police officer an intent to flee from the police is sufficiently suspicious in and of itself to justify a temporary investigative stop by the police. Such flight, although not illegal, gives rise to a reasonable suspicion that some sort of wrongful activity might be afoot. *See Jackson,* 147 Wis. 2d at 832–33. We emphasize that the temporary stop we authorize is just that: temporary. It is not, without more, an arrest with all the rights the police have attendant to an arrest. It is the right to temporarily freeze the situation in order to make investigative inquiry.

Because we conclude that Anderson's evasive behavior in avoiding police contact alone justified the temporary stop, we need not engage in community caretaker analysis, or determine whether an objective basis later existed upon which to stop Anderson for a traffic violation under *State v. Baudhuin.*

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the trial court to reinstate the conviction.

CHIEF JUSTICE HEFFERNAN (concurring). At approximately 2:00 a.m. on May 28, 1985, about two weeks after Officer Bushey received the initial complaint from his father about Anderson parking in his private parking spot, Officer Bushey and his partner were riding patrol in their marked squad car in a single-lane alley in downtown Elkhorn. Upon noticing the defendant's vehicle approaching the squad car, Bushey slowed his squad car and pulled into an adjacent parking area. He wanted to let the defendant through to park in a spot behind the Elk Restaurant, knowing that the defendant lived above that restaurant, and that this particular vehicle was often parked there. According to Officer Bushey, he intended to let the driver of the vehicle park, and then talk to the driver about the parking complaints.

The vehicle did not park, but instead turned into an adjoining alley, and exited onto a main street. Officer Bushey decided to follow the vehicle, both because he wanted to advise Anderson of the parking complaint and because he thought Anderson was attempting to avoid the police. Upon exiting the alley, Bushey saw the defendant's car turn another corner and rapidly accelerate.

At the suppression hearing, Officer Bushey testified that, in his opinion, Anderson had reached speeds of up to ten to fifteen miles per hour in an alleyway and twenty-five to thirty miles per hour in a twenty-five miles per hour zone on the street. This conclusion was based on Officer Bushey's experience of observing cars while running radar. In addition, he testified that he had to accelerate to forty miles per hour in order to catch the vehicle. Officer Bushey did not, however, clock Ander-

son's vehicle by using either his own speedometer or radar. Officer Bushey conceded that he would not have issued a traffic citation in this case, even though it was his opinion that Anderson was speeding. Two trial judges saw and heard Officer Bushey testify and, from his testimony, concluded that Anderson was speeding.[1]

This court stated in *State v. Baudhuin,* 141 Wis. 2d 642, 650, 416 N.W.2d 60 (1987), that so long as an officer has objective facts that a defendant was violating a traffic law, the stop is justified, regardless of the officer's subjective motivation for stopping the defendant. Because Officer Bushey stated articulable facts to believe that the defendant was speeding, I conclude that the stop was justified, and the court should not look any further to justify the stop. Accordingly, I concur in the court's mandate to reverse the court of appeals decision.

---

[1]Judge Carlson, after seeing and hearing Officer Bushey testify, concluded:

> The officer, although he traveled up to 40 miles per hour traveling this distance which has been measured at 2,282 feet, or something in that neighborhood, the officer had to speed up to 40 miles per hour and had an opinion that he was in violation of the law, although he indicates he would not have issued a citation based on the evidence that he had; he was not able to pass nor to obtain a radar reading on the speed of the vehicle. It was his opinion that the vehicle was in excess of the speed laws. I think an officer has a right to stop such a vehicle and at least warn the driver of such behavior . . ..

Judge Read, on remand from the court of appeals, held another evidentiary hearing at which Officer Bushey again testified. Judge Read concluded:

> The officers observed the vehicle speed up to 30 miles per hour, which is over the 25 mile per hour speed limit. While the officers were unable to clock the vehicle for any length of time or distance, they stopped the vehicle, as this Court finds they were legally entitled to do.

I disagree, however, with the majority that Anderson was engaging in "suspicious" behavior because he avoided a confrontation with the police. I cannot agree with the majority that the facts and circumstances presented here constitute "flight" from the police.

Today the court adopts a bright-line rule that "flight" in and of itself is suspicious behavior which justifies a stop. I have no occasion to dispute that legal pronouncement, but to typify Anderson's actions as "flight" goes beyond our legitimate powers. When there are competing inferences that may appropriately be drawn, the drawing of those inferences is reserved to the trial court alone. We beg the question when we usurp the powers of the trial court and characterize Anderson's conduct as "flight."

Officer Bushey, who stopped Anderson, concluded only that Anderson was "evasive" or "wanted to avoid contact with the police officer." The trial judge, who saw and heard the testimony of Officer Bushey, concluded that it was suspicious behavior because it was 2:00 a.m., Anderson avoided the police, he was speeding, and it was in an alleyway behind business areas. The trial judge did not conclude that Anderson's conduct constituted "flight" from the police, nor that his avoidance of the police in and of itself was suspicious behavior. It is inappropriate and usurpative for this court to transmute the trial judge's finding of fact that the defendant avoided contact with the police into a finding that the defendant was "fleeing" from the police.

While deliberately furtive actions or flight at the approach of law officers may constitute suspicious behavior, some actions, like Anderson's, are nothing more than a response to an awareness that police are in the vicinity and a desire to avoid any confrontation with the police. Professor LaFave emphasized that whether

certain actions, *in and of themselves,* justify stopping for investigation is indeed a difficult question. LaFave states:

> [S]ome actions which may fairly be said to be in response to an awareness that police are in the vicinity are not of that type [suspicious]; persons on the street watch police and engage in similar activities out of interest in what the police are doing and out of a desire to avoid some minor misstep, such as a minor traffic violation, which would involve them unnecessarily with the police. Thus, it has properly been held that the "hesitancy of a car to pass a police cruiser and a glance at the police by a passenger," a "startled look at the sight of a police officer," appearing nervous when a police car passed, looking away from police activity in the vicinity, pointing toward police, or quickening one's pace upon seeing the police are not, standing alone, sufficient bases for an investigative stop. By contrast, such stops have been upheld when the individual made repeated efforts to avoid police contact [citing *State v. Williamson,* 58 Wis. 2d 514, 206 N.W.2d 613 (1973)], when he engaged in a combination of several different possibly furtive actions, and when the person engaged in a rather extreme means of avoidance such as high-speed flight [citing *State v. Jackson,* 147 Wis. 2d 824, 434 N.W.2d 386 (1989)].

3 W. LaFave, *Search and Seizure,* sec. 9.3(c), pp. 450–451 (2nd ed. 1987).

While flight in and of itself may constitute suspicious behavior, as was the case in *State v. Jackson,* 147 Wis. 2d 824, 434 N.W.2d 386 (1989), this case does not present the court with the opportunity it looks for to adopt a bright-line rule. In its haste to adopt the *per se* rule, the majority overlooks the role of this court which

is to defer to the findings of the trier of fact and, in addition, oversimplifies a very difficult issue.

For the reasons stated, I concur in the mandate but do not join in the opinion.

I am authorized to state that Justice Shirley S. Abrahamson joins in this concurrence.