**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**August 19, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP327-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CT266

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

V.

JOHN WILLIAM LANE,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Portage County: PATRICIA BAKER, Judge. *Affirmed.*

¶1     GRAHAM, J.[1]  The State charged John W. Lane with operating a motor vehicle while intoxicated and with a prohibited blood alcohol concentration,

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

third offense, based on evidence obtained during a traffic stop. The State appeals a circuit court order granting Lane's motion to suppress this evidence.[2] I affirm.

¶2      The facts pertinent to this appeal come from the officer's testimony, which the circuit court credited, and from video footage of the stop. I reference the testimony and footage as needed in the discussion below.

¶3      The Fourth Amendment prohibits unreasonable searches and seizures. U.S. CONST. amend. IV. "'The temporary detention of individuals during a stop of an automobile by police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment.'" *State v. Popke*, 2009 WI 37, ¶11, 317 Wis. 2d 118, 765 N.W.2d 569 (quoted source omitted). Therefore, the "stop must not be unreasonable under the circumstances." *Id.*

¶4      A traffic stop is reasonable if supported by reasonable suspicion that a violation has been or will be committed. *Id.* To establish reasonable suspicion, an officer "'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the intrusion of the stop." *State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d

---

[2] This case has a lengthy history. In an earlier appeal, the circuit court, the Honorable Thomas T. Flugaur presiding, suppressed the results of Lane's blood alcohol test on the grounds that Lane withdrew his consent to chemical testing. Following our supreme court's decision in *State v. Randall*, 2019 WI 80, 387 Wis. 2d 744, 930 N.W.2d 223, this court reversed and remanded for additional proceedings, *State v. John W. Lane*, No. 2019AP153, unpublished slip op. (WI App October 17, 2019). The order on appeal resulted from the proceedings following remand.

The Honorable Thomas T. Flugaur presided over the motion to suppress proceedings that are the subject of this appeal and the Honorable Patricia Baker entered the order granting the motion to suppress.

634 (quoted source omitted). Ultimately, what constitutes reasonable suspicion necessary to justify an investigative stop of a vehicle is a "'common sense test: under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience.'" *State v. Colstad*, 2003 WI App 25, ¶8, 260 Wis. 2d 406, 659 N.W.2d 394 (quoted source omitted).

¶5      Appellate review of an order granting or denying a suppression motion presents an issue of constitutional fact. *State v. Johnson*, 2013 WI App 140, ¶6, 352 Wis. 2d 98, 841 N.W.2d 302. The appellate court will uphold the circuit court's findings of fact unless they are clearly erroneous, and then independently review the application of constitutional principles to those facts. *Id.*

¶6      As an initial matter, the State does not argue that any factual finding by the circuit court is clearly erroneous. Here, the circuit court's findings of fact are based on the account given by the arresting officer, who testified as follows. The officer observed Lane leaving a bar in the early morning hours of August 21, 2017. The officer followed Lane for about three-quarters of a mile and then immediately stopped Lane after observing Lane's motorcycle, which was "initially in the right-hand lane, went over to the left-hand lane, no signal, then back over to the right-hand lane." There is no evidence that any other vehicles were on the road in close proximity to Lane. Lane deviated from the right lane only once, and the officer acknowledged that he saw no other concerning behavior.

¶7      The circuit court reviewed the officer's squad-camera video, which does not evince any swerving or weaving. Rather, it appears that Lane was driving close to the centerline, and the lane deviation resulted from him overcorrecting as he navigated a curve on the roadway. The court commented that

3

Lane crossed the center line only "momentarily," that the maneuver "was not done in an unsafe manner," that this maneuver was not "perfect" but "drivers are not expected or required to be perfect," and that overall, Lane's overall driving appeared to be normal and safe.

¶8      Based on these undisputed facts, and for reasons I now explain, I conclude the officer lacked reasonable suspicion to stop Lane's vehicle.

¶9      It is apparent from the record and the officer's testimony that he believed he could stop Lane's vehicle due to an apparent violation of WIS. STAT. § 346.34(1)(a)3., which provides that no person may "[t]urn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety."  The circuit court concluded that Lane did not violate § 346.34(1)(a)3., and the State does not challenge the court's subsequent determination that the purported violation of § 346.34(1)(a)3. does not provide reasonable suspicion for the stop.

¶10      Instead, the State argues that, regardless of whether Lane violated WIS. STAT. § 346.34(1)(a)3., and regardless of the officer's subjective reasons for stopping his vehicle, there existed reasonable suspicion to objectively believe Lane was driving while intoxicated.  Specifically, the State asserts that the lane deviation coupled with the officer's knowledge that Lane just departed from a bar gave rise to reasonable suspicion of intoxicated driving.

¶11      Wisconsin law recognizes that a law enforcement officer may make an investigative stop based solely on observations of lawful conduct.  *State v. Waldner*, 206 Wis. 2d 51, 57, 556 N.W.2d 681 (1996)  An officer is not required to rule out the possibility of innocent behavior before initiating the stop.  *State v. Anderson*, 155 Wis. 2d 77, 84, 454 N.W.2d 763 (1990).  Nevertheless, the seizure

must still be premised on reasonable inferences drawn from the lawful conduct that establish criminal activity is afoot. *Waldner*, 206 Wis. 2d at 57. An "'inchoate and unparticularized suspicion or hunch'" is not enough. *Post*, 301 Wis. 2d 1, ¶10 (quoted source and emphasis omitted).

¶12 The State concedes that leaving a bar in the early morning hours, by itself, does not constitute reasonable suspicion of impaired driving. Although an officer might reasonably suspect that there was a distinct possibility that Lane had consumed alcohol at the bar, not every person who goes to a bar consumes alcohol, and not every person who has consumed alcohol is impaired. By itself, the fact that the officer observed Lane departing from a bar at approximately 2:10 a.m. amounts to nothing more than an inchoate and unparticularized hunch that Lane consumed alcohol to the point where his driving was impaired.

¶13 The State relies primarily on *Waldner*, 206 Wis. 2d 51, and *Post*, 301 Wis. 2d 1, to support its assertion that departing from a bar coupled with Lane's slight lane deviation amounts to reasonable suspicion. I disagree.

¶14 In *Waldner*, the driver traveled at a slow rate of speed, stopped at an uncontrolled intersection, turned a corner and accelerated at a high rate of speed, and then poured liquid and ice onto the ground after stopping his vehicle. *Waldner*, 206 Wis. 2d at 60-61. The *Waldner* court held that, although the officer did not observe any illegal act, the stop was "based on more than a 'hunch.'" *Id.* at 57.

¶15 Likewise, in *Post*, an officer observed a vehicle weaving approximately ten feet from right to left in a discernible S-pattern and at least partially in the unmarked parking lane over the course of two blocks. *See Post*, 301 Wis. 2d 1, ¶¶3-5, 30, 37. Our supreme court rejected a proposed bright-line

5

rule that "weaving within a single traffic lane," alone, gives rise to the reasonable suspicion necessary to conduct an investigative stop. *Id.*, ¶¶18-21. Nevertheless, the *Post* court concluded that, although the case presented a "close call," *id.*, ¶27, there was more than a "slight deviation within one's lane," *id.*, ¶29. Based on the totality of circumstances, there was reasonable suspicion for an investigative stop. *Id.*, ¶36.

¶16 Notably, in both cases, the officer observed a pattern of unusual behavior on the road. Here, by contrast, the isolated lane deviation was momentary and slight. As the circuit court determined, Lane's driving, though not "perfect," was insufficient to provide particularized suspicion that Lane was impaired. As *Waldner* and *Post* exemplify, something more was needed to constitute a reasonable suspicion that Lane was intoxicated at the time of the stop. *See Waldner* 206 Wis. 2d at 58; *Post*, 301 Wis. 2d 1, ¶37. Even coupled with the possibility that Lane was coming from a bar and might have consumed alcohol, the slight lane deviation observed by the officer is not an objectively reasonable basis for stopping Lane.

¶17 To be clear, I take no issue with the State's assertion that "the principal function of [an] investigative stop is to quickly resolve ambiguity [regarding an individual's suspicious conduct or activity] and to establish whether the suspect's activity is legal or illegal." *See State v. Jackson*, 147 Wis. 2d 824, 835, 434 N.W.2d 386 (1989); *see also Waldner*, 206 Wis. 2d at 60 ("Suspicious conduct by its very nature is ambiguous, and the principal function of the investigative stop is to quickly resolve that ambiguity."). However, as indicated above, the circumstances of this case simply do not support the State's assertion that the facts observed by the officer were suspicious, warranting a "temporar[y] freeze [of] the situation." *Jackson*, 147 Wis. 2d at 835.

6

¶18    For all the foregoing reasons, I conclude that the traffic stop was not supported by reasonable suspicion and therefore violated the Fourth Amendment's prohibition against unreasonable seizures.  Therefore, the circuit court correctly suppressed the evidence obtained in the stop, and I affirm.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.