# COURT OF APPEALS
## DECISION
## DATED AND FILED

## May 10, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1739-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CM178

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JONATHON M. MARK,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Fond du Lac County: PETER L. GRIMM and LAURA J. LAVEY, Judges. *Affirmed*.

¶1 GROGAN, J.[1] Jonathon M. Mark appeals from a judgment entered after he pled no contest to resisting or obstructing an officer contrary to WIS.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

STAT. §§ 946.41(1) and 939.51(3)(a). He also appeals from an order denying his postconviction motion alleging ineffective assistance of counsel. Mark believes the circuit court erred in denying his suppression motion and that he received ineffective assistance of counsel for counsel's failure to introduce evidence at the suppression hearing. This court affirms.

## I. BACKGROUND

¶2 In February 2019, Fond du Lac Police Officer Joseph Belisle was outside a local Kwik Trip around 10:40 p.m. investigating an unrelated domestic dispute incident. The officer observed an individual whom he believed to be someone he recognized from a daily police briefing providing pictures of and information about individuals with outstanding warrants. Belisle's first observation of Mark was a "side view" of him as he walked into the Kwik Trip. Believing this to be Mark, Belisle radioed for back up because he knew that Mark was a large man known to be resistive and violent. When Mark exited the Kwik Trip, Belisle observed a "full frontal view," which confirmed for the officer that this individual was Mark—an individual he had seen on the daily police briefing as someone the detective bureau wanted the patrol officers to know had an outstanding warrant.

¶3 When Belisle approached Mark and asked for identification, Mark was uncooperative and refused to give his name or show identification. Mark asserted the officer did not have reasonable suspicion to stop him and denied that he had an outstanding warrant. Belisle grabbed Mark, who physically resisted and ran away. Belisle and the assisting officers were able to catch Mark and arrest him. The State charged Mark with resisting arrest. He initially pled not guilty and

filed a motion seeking to suppress on the basis that the officer lacked reasonable suspicion to stop him.

¶4    Only Belisle testified at the suppression hearing.  As material, he testified that:

- He knew Mark was wanted by their detectives because he had seen the notice on the "SharePoint" system, and he knew Mark "had an active probation warrant for his arrest";

- It was routine department practice to do daily briefings about individuals with outstanding warrants;

- While at Kwik Trip on a domestic dispute call, he saw Mark walk past him into the store, and he got a "[g]ood enough look" to believe this was Mark and call for back up; and

- Belisle also did an in-house check to confirm the individual's name;

- When Mark exited Kwik Trip, he "was able to get a frontal view of him" and confirmed he was Mark.

¶5    Belisle then testified he:

> tried stopping [Mark], asking for his ID.  He said I had no reasonable suspicion to stop him, and I explained to him that he looks like an individual I dealt with in the past, I just wanted to get his ID and make sure he wasn't that person.  He again stated he -- that I didn't have any reasonable suspicion to stop him.  As he was walking away, I then placed my hand on his left arm, placing him in an escort hold, informing him that he did have a warrant for his arrest.  He stated that he did not have a warrant.  He then tensed up his arm, squatted down to get a lower center of gravity, and then pulled his arm away from me and began running away along the west side of the building.

Belisle confirmed that Mark's fleeing suggested Mark knew about the warrant.  On cross-examination, when asked if Mark had glasses on that night, Belisle

answered, "No." Belisle also confirmed that Mark had his hood up, and therefore, Mark's hair was not visible.

¶6 At the conclusion of the hearing, the circuit court denied the suppression motion, making the following findings. The circuit court found: (1) Belisle was credible; (2) he had four years of experience as an officer and had proper training; (3) Belisle knew the detective bureau had an active warrant out for Mark; (4) Belisle had seen Mark's photo, physical description, and information from daily police briefings that Mark was resistive and violent; (5) Belisle saw this information via the SharePoint system, which identifies individuals with outstanding warrants the police should be on the lookout for; (6) Belisle got a good side-profile look at Mark as he entered the Kwik Trip—a look that was "good enough" to believe the individual was Mark because it caused Belisle to call for back up; and (7) Belisle got a "full frontal view" of Mark on his way out of the Kwik Trip, which confirmed Mark was the individual he believed him to be. Accordingly, the circuit court held that Belisle had reasonable suspicion to stop Mark and denied his suppression motion.

¶7 Mark then entered into a plea bargain with the State where he pled no contest to the resisting charge in exchange for a recommendation that he would be sentenced to time served with sentence credit for 169 days. The circuit court accepted the plea, and after imposing sentence, it entered judgment.

¶8 Although Mark initially proceeded to file a direct appeal, this court subsequently granted Mark's motion to dismiss the appeal to allow him to file a postconviction motion. Mark's motion alleged ineffective assistance of counsel on the basis that his trial counsel failed to introduce evidence at the suppression hearing that he claims may have changed the result. Specifically, Mark claimed

4

the squad camera video, which trial counsel had obtained prior to the hearing, should have been introduced and that trial counsel should have called Mark to testify that he was wearing glasses on the night in question.

¶9      The circuit court[2] held a ***Machner***[3] hearing where both Mark and his trial counsel testified.  The circuit court also viewed the squad camera video.  At the conclusion of the hearing, the circuit court found that Mark failed to establish his trial counsel gave him ineffective assistance.  The circuit court found that the squad video would have actually bolstered the decision to deny the suppression motion, and although Mark's testimony that he was wearing glasses may have been a contrary fact, it would not have changed the suppression ruling.  Mark now appeals.

## II.  DISCUSSION

¶10     Mark makes two arguments on appeal.  First, he contends the circuit court erred in denying his suppression motion.  He claims there is insufficient evidence to show the officer had reasonable suspicion to stop him.  Second, he contends the circuit court erred in denying his postconviction motion in which he asserted he received ineffective assistance.  He argues that if trial counsel had introduced the squad video and Mark's testimony about wearing glasses, the suppression motion would have been granted.  This court rejects both arguments.

---

[2] The Honorable Laura J. Lavey handled the postconviction proceedings because the Honorable Peter L. Grimm had retired.

[3] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶11 An order granting or denying a motion to suppress evidence presents a question of constitutional fact, which requires a two-step analysis on appellate review. *State v. Asboth*, 2017 WI 76, ¶10, 376 Wis. 2d 644, 898 N.W.2d 541. "First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." *State v. Robinson*, 2010 WI 80, ¶22, 327 Wis. 2d 302, 786 N.W.2d 463 (citations omitted).

¶12 The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and that "no Warrants shall issue, but upon probable cause[.]" U.S. CONST. amend. IV. Article I, section 11 of the Wisconsin Constitution likewise provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated" and that "no warrant shall issue but upon probable cause[.]" WIS. CONST. art. I, § 11. The "ultimate touchstone of the Fourth Amendment is 'reasonableness[.]'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).

¶13 "A criminal defendant has the constitutional right to effective assistance of counsel." *State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89. A defendant is denied that right when counsel performs deficiently, and the deficiency is prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). "An ineffective assistance of counsel claim presents a mixed question of fact and law." *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. "Findings of fact include 'the circumstances of the case and the counsel's conduct and strategy[,]'" and those findings will not be disturbed unless clearly erroneous.

*State v. Thiel*, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted). Whether counsel's performance was deficient and whether the deficient performance was prejudicial are questions of law we review de novo. *State v. Sanchez*, 201 Wis. 2d 219, 236, 548 N.W.2d 69 (1996). A defendant must satisfy both prongs to establish ineffective assistance of counsel. *State v. Carter*, 2010 WI 40, ¶21, 324 Wis. 2d 640, 782 N.W.2d 695.

   *A. Suppression*

   ¶14   Mark believes the circuit court erred when it denied his motion to suppress. He contends that the officer's testimony is insufficient to show the officer had reasonable suspicion to stop Mark. Specifically, Mark says the officer did not testify about any physical descriptors; he had Mark's name wrong initially;[4] it was dark, and Mark had his hood up and did not look directly at the officer; the officer did not have any prior *personal* contact with Mark; and under all these circumstances, it is improbable that the officer could accurately identify Mark as the individual with the outstanding warrant. The problem with Mark's argument is that the circuit court weighed these assertions against the officer's testimony, which the court heard firsthand, and believed the officer.

   ¶15   This court will not overturn a circuit court's factual findings unless they are clearly erroneous, and this court is not convinced that any of the circuit court's findings are clearly erroneous. Each of those findings was based on the officer's testimony, which the circuit court found credible. The circuit court is

---

[4] Officer Belisle testified that when he first saw Mark, he could not recall Mark's name. He called in an "in-house check" for "Mark King," indicating he had seen him on the SharePoint briefing as "wanted by the detective bureau." Another officer responded to the in-house name check that the person's name was Jonathon Mark.

"the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony." *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345. This court accepts those credibility determinations. *See* *State v. Quarzenski*, 2007 WI App 212, ¶19, 305 Wis. 2d 525, 739 N.W.2d 844.

¶16 The officer's credible testimony supports the reasonable suspicion finding. The officer had seen Mark's picture in multiple briefings and was told to be on the lookout for Mark because he had an outstanding warrant for a violent crime. The officer then saw Mark walk into the Kwik Trip, and although he only saw him from the side view with his hood up, this view was "[g]ood enough" for the officer to think it was Mark. The officer's identification of Mark was confirmed when he saw Mark exit the Kwik Trip, allowing a "full frontal view" of Mark.

¶17 Our supreme court held that "an officer may in appropriate circumstances temporarily detain a suspicious person for investigative questioning." *State v. Jackson*, 147 Wis. 2d 824, 830, 434 N.W.2d 386 (1989).

> The Fourth Amendment *does not require a policeman* who lacks the precise level of information necessary for probable cause to arrest *to simply shrug his shoulders and allow* a crime to occur or *a criminal to escape*. On the contrary, *Terry*[5] recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, *in order to determine his identity* or to maintain the status quo momentarily while obtaining more information, *may be most reasonable* in light of the facts known to the officer at the time.

---

[5] *Terry v. Ohio*, 392 U.S. 1, 22 (1968).

*Adams v. Williams*, 407 U.S. 143, 145-46 (1972) (emphases added; citation omitted). Our supreme court "stressed that the focus of a *Terry* type stop is on *reasonableness*. It is a common sense question, which strikes a balance between the interests of society in solving crime and the members of that society to be free from unreasonable intrusions. The essential question is whether the action of the law enforcement officer was reasonable under all the facts and circumstances present." *Jackson*, 147 Wis. 2d at 831 (emphasis added).

¶18    What Officer Belisle did here was unquestionably reasonable. He saw someone whom he believed to be someone with an outstanding arrest warrant and known to be violent. He did not act immediately but waited to confirm that Mark was in fact that individual. This was *not* an unreasonable intrusion. In fact, it is the textbook example of good police work. The law does not compel an officer in these circumstances to simply "shrug his shoulders" and let a criminal walk away. *See Adams*, 407 U.S. at 145. Had Belisle been wrong about recognizing this individual as Mark, the interaction would have ended when the person clarified that he in fact was not Mark. Of course, that was not what happened, and Belisle's reasonable actions resulted in arresting a person with an outstanding warrant who was known to be violent.

¶19    Mark's reliance on *State v. Harris*, 206 Wis. 2d 243, 557 N.W.2d 245 (1996) is misplaced because that case is distinguishable. *Harris* did not involve an identified person whose name and photo were known to the officer and who was wanted on an outstanding warrant. The circuit court did not err in denying Mark's suppression motion.

B. *Ineffective Assistance*

¶20     Mark's second argument is that the circuit court erred in denying his postconviction motion, wherein he alleged his trial counsel provided ineffective assistance. Specifically, he faulted his trial counsel because he did not introduce at the suppression hearing either the squad video or testimony from Mark that he was wearing glasses on the night of his arrest. This court rejects his argument.

¶21     Neither the video nor Mark's glasses testimony would have changed the outcome of the suppression hearing and therefore cannot satisfy the second prong of the *Strickland* test. *See Strickland*, 466 U.S. at 687; *Carter*, 324 Wis. 2d 640, ¶21 (defendant must prove both deficient performance and prejudice). This court agrees with the circuit court's assessment that using the video at the suppression hearing would not have helped Mark. The video shows the close proximity within which Mark walked past the officer. The video would have bolstered the credibility of the officer's testimony. There is certainly nothing on the video that alters the circuit court's finding that the officer's testimony was credible. This court agrees with the postconviction court's assessment that introducing the video would have only further supported the suppression ruling.

¶22     As far as not putting Mark on the stand to testify that he was wearing glasses, this court cannot conclude that alone establishes ineffective assistance. It would have been an additional factor for the circuit court to consider, but as stated above, the police officer's actions here were imminently reasonable and therefore did not violate the Fourth Amendment. *See Jackson*, 147 Wis. 2d at 831. Mark's testimony that he was wearing glasses would not have changed the conclusion that the officer acted reasonably, and therefore his trial counsel's failure to introduce

this testimony could not have prejudiced him. *See* **Strickland**, 466 U.S. at 687; **Carter**, 324 Wis. 2d 640, ¶21.

¶23 This court concludes that Mark failed to establish that his trial counsel provided ineffective assistance, and therefore the circuit court did not err in denying his postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.