STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Johnny J. WALDNER, Defendant-Appellant.

Supreme Court

*No. 95–1291–CR. Oral argument October 18, 1996.—Decided December 13, 1996.*

(Also reported in 556 N.W.2d 681.)

For the plaintiff-respondent-petitioner there were briefs and oral argument by *William Andrew Sharp*, district attorney.

For the defendant-appellant there was a brief by *Ralph A. Kalal* and *Kalal & Associates*, Madison and oral argument by *Ralph A. Kalal*.

WILLIAM A. BABLITCH, J.   The State of Wisconsin seeks review of a court of appeals' decision concluding that police officer Sergeant John Annear (Sgt. Annear) did not have a reasonable suspicion justifying the investigative stop of the defendant Johnny J.

Waldner (Waldner) which led to his arrest for operating a vehicle while under the influence of an intoxicant. We conclude that the totality of the circumstances, including Waldner's unusual driving at a late hour and his dumping of liquid and ice from a plastic cup, coalesced to form the basis for a reasonable suspicion grounded in specific, articulable facts and reasonable inferences from those facts. Sergeant Annear was therefore justified in temporarily stopping Waldner, thereby freezing the situation in order to further investigate. Accordingly, we reverse.

As summarized by the court of appeals, the facts developed in the record are as follows:

> [At 12:30 a.m., Sgt. Annear] of the Richland Center Police Department. . .saw Waldner's car traveling on a main street in Richland Center at a slow rate of speed. The car stopped briefly at an intersection where there was no stop sign or light and then turned onto a cross-street, where, according to Annear, it then accelerated "at a high rate of speed"—which he described as reaching 20 to 25 miles per hour in "several seconds." He acknowledged that no laws had been broken.
>
> Following the car, Annear saw it pull into a legal streetside parking space. The driver's-side door opened and Annear saw Waldner, in the driver's seat, pour some liquid—which he described as looking like "a mixture of liquid and ice"—out of a plastic glass onto the roadway.
>
> Annear pulled up behind the car, noticing that Waldner had gotten out of the car. He described what happened next:
>
> He [Waldner] began walking around the front of [his car], and when I pulled up and identified myself, he began to walk away from the squad car.

At that point Annear asked Waldner to stop, which he did.

*State v. Waldner*, No. 95-1291-CR, unpublished slip op. at 1-2 (Wis. Ct. App. Sept. 21, 1995). Sergeant Annear did not activate his flashing lights nor his siren.

After a hearing in the circuit court of Richland County, Circuit Judge Kent C. Houck denied Waldner's pretrial motion to suppress, concluding that reasonable inferences from the facts supported Sgt. Annear's suspicion that Waldner had committed a crime and, therefore, the investigative stop was lawful. Subsequently, Waldner pleaded no contest and was convicted of operating a motor vehicle while under the influence of intoxicants pursuant to Wis. Stat. § 346.63(1)(a) (1991-92).

The court of appeals reversed Waldner's conviction, finding that neither the facts nor reasonable inferences drawn from the facts raised Sgt. Annear's inchoate hunch to the level of a reasonable suspicion. We in turn reverse the court of appeals.

■

In reviewing a denial of a motion to suppress, we will uphold the circuit court's findings of fact unless they are against the great weight and clear preponderance of the evidence. Whether those facts satisfy the constitutional requirement of reasonableness is a question of law and therefore we are not bound by the lower court's decisions on that issue. *State v. Guzy*, 139 Wis. 2d 663, 671, 407 N.W.2d 548 (1987), *cert. denied*, 484 U.S. 979.

The Fourth Amendment protects "the right of the people. . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. In *Terry v. Ohio*, 392 U.S. 1, 22 (1968), the United States Supreme

54

Court recognized that although an investigative stop is technically a "seizure" under the Fourth Amendment, a police officer may, under the appropriate circumstances, detain a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.

In *State v. Chambers*, 55 Wis. 2d 289, 294, 198 N.W.2d 377 (1972), we adopted the position of the United States Supreme Court that a police officer may in appropriate circumstances temporarily stop an individual when, at the time of the stop, he or she possesses specific and articulable facts which would warrant a reasonable belief that criminal activity was afoot. Our legislature codified the constitutional standard established in *Terry* in Wis. Stat. § 968.24 (1993-94), cited in full below.[1] Section 968.24 is the "statutory expression" of the Terry requirements, and in interpreting the scope of the statute, resort must be made to Terry and the cases following it. *State v. Jackson*, 147 Wis. 2d 824, 830, 434 N.W.2d 386 (1989).

The fundamental focus of the Fourth Amendment, and Wis. Stat. § 968.24 is reasonableness. *State v. Anderson*, 155 Wis. 2d 77, 83, 454 N.W.2d 763 (1990). The court of appeals accurately stated the test to be

---

[1] **Temporary questioning without arrest.** After having identified himself or herself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such a person is committing, is about to commit or has committed a crime, and may demand the name and address of the person and an explanation of the person's conduct. Such detention and temporary questioning shall be conducted in the vicinity of where the person was stopped.

Wis. Stat. § 968.24.

used for determining whether an investigatory stop was reasonable:

> The test is an objective one, focusing on the reasonableness of the officer's intrusion into the defendant's freedom of movement: "Law enforcement officers may only infringe on the individual's interest to be free of a stop and detention if they have a suspicion grounded in specific, articulable facts and reasonable inferences from those facts, that the individual has committed [or was committing or is about to commit] a crime. An 'inchoate and unparticularized suspicion or "hunch". . .will not suffice.' "

*Waldner*, No. 95-1291-CR, unpublished slip op. (quoting *Guzy*, 139 Wis. 2d at 675, quoting *Terry v. Ohio*, 392 U.S. at 27 .

The question of what constitutes reasonableness is a common sense test. *State v. Anderson*, 155 Wis. 2d 77, 83, 454 N.W.2d 763 (1990). What would a reasonable police officer reasonably suspect in light of his or her training and experience. *Id.* at 83-84. This common sense approach strikes a balance between individual privacy and the societal interest in allowing the police a reasonable scope of action in discharging their responsibility.

The societal interest involved is, of course, that of effective crime prevention and detection consistent with constitutional means. It is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.

Waldner contends that the investigatory stop was unlawful for two reasons: (1) the stop was based merely

on Sgt. Annear's inchoate "hunch" that Waldner was engaged in criminal activity; and (2) since the conduct observed by Sgt. Annear was not unlawful, there was no basis for the stop. We conclude that Waldner misinterprets the totality of the facts and misunderstands the law of investigatory stops. The record reveals that Sgt. Annear's decision to stop Waldner was based on more than a "hunch." The law allows a police officer to make an investigatory stop based on observations of lawful conduct so long as the reasonable inferences drawn from the lawful conduct are that criminal activity is afoot.

We first address Waldner's argument that the stop was based merely on a hunch, not a reasonable suspicion. A central concern of the Supreme Court is to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasion at the unfettered discretion of officers in the field. *Brown v. Texas*, 443 U.S. 47 (1979). Waldner argues that the investigatory stop which led to his arrest was based on Sgt. Annear's "hunch" and that a police officer's hunch can never justify an investigatory stop because it would lead to unfettered discretion of police officers in the field. While we agree with Waldner and the court of appeals that an inchoate and unparticularized suspicion will not support an investigatory stop, *Guzy*, 139 Wis. 2d at 675, Sgt. Annear had much more than a "hunch" when he stopped Waldner. His suspicion was based on specific, articulable facts and the reasonable inferences drawn from those facts.

As the circuit court explained:

> Normally, a person drives at a rate of speed, comes to a corner, they want to turn and they turn the corner. They may slow down, but they don't drive in

57

this manner. So I think at that point the officer had a reasonable grounds for a reasonable suspicion that there was something wrong with the person's driving. Could have been a person that was over-tired; could have been a person that was suffering from carbon monoxide poisoning, something like that. Also could have been a person who had been drinking. It was also, I believe, 12:30 in the morning where it is more likely where a person who has been drinking might be on the road. [The drink poured from the cup] could have been ginger ale, it could have been water, but when coupled with the kind of driving, it could also have been an alcoholic bever-age. . . . But when you put all of them together, I think the officer did have a basis for a reasonable belief that this driver was impaired and very well could have been intoxicated.

■

We agree with the circuit court that these facts, looked at together, formed a reasonable basis for Sgt. Annear's suspicion that this driver was impaired and very well could have been intoxicated. Any one of these facts, standing alone, might well be insufficient. But that is not the test we apply. We look to the totality of the facts taken together. The building blocks of fact accumulate. And as they accumulate, reasonable infer-ences about the cumulative effect can be drawn. In essence, a point is reached where the sum of the whole is greater than the sum of its individual parts. That is what we have here. These facts gave rise to a reasona-ble suspicion that something unlawful might well be afoot.

■

This takes us to Waldner's second argument. Waldner contends that lawful acts cannot form the basis for a reasonable suspicion justifying a stop. We

agree that these acts by themselves were lawful and that each could well have innocent explanations. But that is not determinative. Waldner's argument is contrary to well-settled law. When an officer observes unlawful conduct there is no need for an investigative stop: the observation of unlawful conduct gives the officer probable cause for a lawful seizure. If Waldner were correct in his assertion of the law, there could never be investigative stops unless there was simultaneously sufficient grounds to make an arrest. That is not the law. The Fourth Amendment does not require a police officer who lacks the precise level of information necessary for probable cause to arrest to simply shrug his or her shoulders and thus possibly allow a crime to occur or a criminal to escape. The law of investigative stops allow police officers to stop a person when they have less than probable cause. Moreover, police officers are not required to rule out the possibility of innocent behavior before initiating a brief stop. *Anderson*, 155 Wis. 2d at 84. The facts in *Terry* illustrate the inaccuracy of Waldner's argument.

The *Terry* Court upheld the legality of an investigative stop by a police officer who observed the defendants repeatedly walk back and forth in front of a store window at 2:30 in the afternoon, and then confer with each other. The officer suspected the two of contemplating a robbery and stopped them to investigate further.

Walking back and forth in front of a store on a public sidewalk is perfectly legal behavior. Nonetheless, reasonable inferences of criminal activity can be drawn from such behavior. As this court noted in *Jackson*, "the suspects in *Terry* 'might have been casing the store for a robbery, or they might have been window-shopping or impatiently waiting for a friend in the

store.'" *Jackson*, 147 Wis. 2d at 835 (citation omitted). Nonetheless, the Court concluded that the investigative stop of the *Terry* defendants was permissible because, based on the police officer's training and experience, their lawful conduct gave rise to a reasonable inference that criminal activity was afoot. In short, Terry's conduct though lawful was suspicious.

Suspicious conduct by its very nature is ambiguous, and the principal function of the investigative stop is to quickly resolve that ambiguity. *Anderson*, 155 Wis. 2d at 84. Thus, when a police officer observes lawful but suspicious conduct, if a reasonable inference of unlawful conduct can be objectively discerned, notwithstanding the existence of other innocent inferences that could be drawn, police officers have the right to temporarily detain the individual for the purpose of inquiry. *Id.* Police officers are not required to rule out the possibility of innocent behavior before initiating a brief stop. If a reasonable inference of unlawful conduct can be objectively discerned, notwithstanding the existence of other innocent inferences that could be drawn, the officers have the right to temporarily detain the individual for the purpose of inquiry. *Id.*

Sergeant Annear was discharging a legitimate investigative function when he decided to approach Waldner. He had observed Waldner go through a series of acts, each perhaps innocent in itself, but which taken together warranted further investigation. There is nothing unusual nor unlawful in a car driving down the street at 12:30 a.m. in Richland Center. Nor is there anything unlawful about an individual in these circumstances driving slowly, then suddenly accelerating. Unusual perhaps, suspicious maybe, but not unlawful. Likewise, it is not unlawful for this same car to stop at an intersection before making a left turn when there is

no oncoming traffic and no stop sign. Unusual? Certainly. Suspicious? Maybe. But unlawful? No. Nor is there anything unlawful about this driver stopping the car at this time of night and dumping a mixture of liquid and ice out of a plastic cup into the roadway. Unusual? Absolutely. Suspicious? Under these circumstances, certainly. Unlawful? No.

Any one of these facts, standing alone, might not add up to reasonable suspicion.[2] But, as stated above in the discussion of issue one, they do coalesce to add up to a reasonable suspicion.

Although many innocent explanations could be hypothesized as the reason for Waldner's actions, a reasonable police officer charged with enforcing the law cannot ignore the reasonable inference that they might also stem from unlawful behavior.

Confronted with these facts, we conclude that it was entirely reasonable for Sgt. Annear to stop Waldner and make inquiry. In other words, Sgt. Annear was entirely reasonable in freezing the situation at that moment in time. The essence of good police work under these circumstances is to briefly stop the individual in order to maintain the status quo temporarily while obtaining more information. *State v. Williamson*, 58 Wis. 2d 514, 518, 206 N.W.2d 613 (1973). Under these circumstances, it would have been poor police work for Sgt. Annear to have failed to investigate. He would have been remiss in his duty to have acted otherwise.

---

[2] The walking away is of slight, if any, consideration here. Nothing in the record indicates that Waldner was even aware of the officer's presence until told to stop. Officer Annear had not used his flashing lights or siren when following Waldner. Nor is there any indication that Waldner was aware of Sgt. Annear's presence until asked by him to stop. When asked to stop, he did.

*By the Court.*—The decision of the court of appeals is reversed.