COURT OF APPEALS
DECISION
DATED AND FILED

June 29, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2020AP1043-CR**

Cir. Ct. No.  **2017CF104**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LAWRENCE GRIFFIN, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: DAVID A. HANSHER, Judge. *Affirmed*.

Before Brash, P.J., Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Lawrence Griffin, Jr. appeals his judgment of conviction for possession of a firearm by a felon. Griffin pled guilty to that charge

after the trial court denied his motion to suppress. Griffin asserts that that the trial court erred in denying his suppression motion, arguing that at the time the arresting police officers seized him— resulting in the discovery of the gun—they did not have reasonable suspicion for the seizure, and it was therefore illegal. We disagree and affirm.

## BACKGROUND

¶2 The charge against Griffin stemmed from an incident that occurred in the early morning hours of August 9, 2016. According to the complaint, officers from the Milwaukee Police Department were on patrol in the area of North 11th Street in Milwaukee at approximately 2:47 a.m. when they saw Griffin standing in the road, leaning into the driver's side window of a parked car. When Griffin saw the marked squad car approaching, he walked around the vehicle to the passenger side, "blading his body in the process" away from the squad. One of the officers stated that he saw Griffin perform a "security check" of his right side—holding the waistband of his pants—as Griffin walked around the vehicle. That officer later explained at the suppression motion hearing that blading and security checks can be indicative of a person having a concealed firearm.

¶3 The officers stopped the squad behind the vehicle, but did not activate its lights or siren. One of the officers exited the squad car "quickly," and then heard the sound of metal hitting concrete. The officer believed that the sound was a firearm that had been dropped in the road. The officer stated that Griffin backed away from the item he had dropped, looking at the ground, but did not attempt to retrieve it; instead, he simply put his hands up. As the officer proceeded toward Griffin, he saw a 9mm handgun on the ground next to the vehicle. The officer then grabbed Griffin's arm and inquired as to whether Griffin had a valid permit to carry

a concealed weapon. When Griffin replied that he did not, the officer took him into custody. Officers subsequently discovered that Griffin had a previous felony conviction.

¶4 Griffin was charged with possession of a firearm by a felon. He filed a motion to suppress the evidence of the firearm that was recovered on the ground, arguing that at the point in time he was seized—which, he asserted, was when the officer got out of the squad—the officer did not have reasonable suspicion of a crime, and the seizure was therefore illegal.

¶5 A hearing on the motion was held in February 2018, with one of the arresting officers testifying as to the events relating to Griffin's arrest. The officer stated that the entire incident—from when the officers turned onto 11th Street to when Griffin was taken into custody—was less than a minute, and that there was only "a few seconds maybe" between the time that the officer exited the squad, heard the gun fall on the ground, and reached Griffin.

¶6 Griffin also testified, stating that he was simply giving cigarettes to his friend who was sitting in the vehicle that night; that he had moved around the vehicle when he saw the squad for purposes of "avoidance," because he did not want to be "talked to" by the officers; and that he had not been holding the waistband of his pants. Griffin testified that it took "[m]aybe 15 seconds" for the officer to exit the squad and reach him.

¶7 The trial court denied the motion, finding that Griffin was not seized until after the officer heard the gun fall to the ground. The court found that at that point, the officer had established reasonable suspicion that Griffin was carrying a gun, and then determined that Griffin did not have a valid permit to carry a concealed firearm.

¶8      Griffin subsequently entered a guilty plea to the charge against him.[1] He was sentenced in August 2019 to five years of initial confinement followed by five years of extended supervision.  This appeal follows.

## DISCUSSION

¶9      On appeal, Griffin argues that the trial court erred in denying his motion to suppress.  The review of a trial court's decision on a motion to suppress presents a mixed question of fact and law.  *State v. Eason*, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625.  We will not reverse the trial court's findings of fact unless they are clearly erroneous; however, we review *de novo* the application of constitutional principles to those facts.  *Id.*

¶10     Griffin argues that his motion to suppress should have been granted because the police officers did not have reasonable suspicion of a crime when Griffin was seized.  "The Fourth Amendment of the United States Constitution and [a]rticle I, [s]ection 11 of the Wisconsin Constitution protect people from unreasonable searches and seizures."  *State v. Young*, 2006 WI 98, ¶18, 294 Wis. 2d 1, 717 N.W.2d 729 (footnotes omitted).  An investigative stop is "technically a 'seizure' under the Fourth Amendment[.]"  *State v. Waldner*, 206 Wis. 2d 51, 55-56, 556 N.W.2d 681 (1996).  However, an investigative stop passes constitutional muster "if the police have reasonable suspicion that a crime has been committed, is being committed, or is about to be committed."  *Young*, 294 Wis. 2d 1, ¶20.

¶11     The specific issue in this case requires a determination of when Griffin was actually seized.  "[A] person is 'seized' only when, by means of physical force

---

[1]  Under the plea agreement, charges against Griffin in a different case were dismissed but read in for sentencing in this case.

or a show of authority, his freedom of movement is restrained." ***United States v. Mendenhall***, 446 U.S. 544, 553 (1980). Put another way, as long as an individual with whom the police have made contact "remains free to disregard the questions and walk away," there has not been a seizure, and the constitutional protections of the Fourth Amendment have not been invoked. ***Id.*** at 553-54.

¶12 Griffin asserts that the seizure occurred when the officer exited the squad car and began moving quickly toward him. The State, on the other hand, argues that the seizure of Griffin did not occur until the officer had grabbed Griffin's arm and inquired about a permit for the gun that had dropped.

¶13 To determine whether a seizure has occurred, the ***Mendenhall*** Court provided several "[e]xamples of circumstances that might indicate a seizure, even where the person did not attempt to leave," such as "the threatening presence of several officers, the display of a weapon by an officer, some physical touching … of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." ***Id.*** at 554. It is also considered to be a seizure "when a police officer makes a show of authority to a citizen, [and] the citizen yields to that show of authority." ***State v. Kelsey C.R.***, 2001 WI 54, ¶30, 243 Wis. 2d 422, 626 N.W.2d 777; *see also* ***California v. Hodari D.***, 499 U.S. 621, 626 (1991) ("An arrest requires *either* physical force … *or*, where that is absent, *submission* to the assertion of authority.").

¶14 Here, the officer's testimony at the suppression hearing—which the trial court found to be credible—indicates that he exited the squad quickly and began moving toward Griffin. However, the lights and siren of the squad had not been activated, and only one officer exited the squad when it stopped. Furthermore, there is no evidence that the officer who exited the squad drew his weapon or spoke to

5

Griffin before he heard the gun drop. Additionally, that officer testified that when the gun dropped, Griffin backed away from it and raised his hands in the air, indicating consciousness of guilt. Moreover, the officer did not restrain Griffin by grabbing his arm until *after* he heard the gun hit the ground.

¶15 Even if Griffin inferred that the officer was approaching him to speak with him, "police questioning, by itself, is unlikely to result in a Fourth Amendment violation" unless "the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded[.]" *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984). We again note that the squad's lights and siren had not been activated; in fact, Griffin testified that he "felt free" to move around the vehicle when he saw the squad approaching. After that, only a few seconds elapsed between the time the officers pulled up in their squad and when the arresting officer heard the gun drop, and there is no evidence that Griffin submitted to police authority during that time frame. *See Kelsey C.R.*, 243 Wis. 2d 422, ¶30.

¶16 Based on these circumstances, we conclude that the seizure of Griffin occurred after the officer heard the gun drop. *See id.* At that point, the officer had reasonable suspicion that a crime "has been committed, is being committed, or is about to be committed," and thus had proper grounds for the seizure. *See Young*, 294 Wis. 2d 1, ¶20. Therefore, the trial court did not err in denying Griffin's motion to suppress. Accordingly, we affirm his judgment of conviction.

> *By the Court.*—Judgment affirmed.

> This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5. (2019-20).

6