COURT OF APPEALS
DECISION
DATED AND FILED

September 27, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP790-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016CF4596

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

  V.

ANDREW LORENZO WREN,

  DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DAVID C. SWANSON and DANIELLE L. SHELTON, Judges. *Affirmed*.

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Andrew Lorenzo Wren appeals from his judgment of conviction for possession with intent to deliver cocaine and possession with intent to deliver narcotics, both with the use of a dangerous weapon and both as a second or subsequent offense, and for possession of a firearm by a felon.  He also appeals from the order denying his postconviction motion.

¶2     Wren argues that the trial court erred in denying his motion to suppress the evidence that was discovered in his vehicle, on the grounds that the police officers did not have reasonable suspicion for the stop; the trial court, in contrast, deemed it to be a field interview as opposed to a seizure, thus determining that reasonable suspicion was not required.  Wren further argues that the trial court erred in denying his motion to suppress his statements to law enforcement during that encounter.

¶3     Upon review, we conclude that while the facts of this case do not necessarily support the trial court's finding that this was a field interview, there was nevertheless reasonable suspicion for the police officers to stop Wren.  We further conclude that the questions posed to Wren during this stop did not invoke the protections of *Miranda v. Arizona*, 384 U.S. 436 (1966).  Therefore, the trial court did not err in denying Wren's motions to suppress, and we affirm.

## BACKGROUND

¶4     The charges against Wren stem from an incident that occurred in September 2016.  According to the criminal complaint, three officers from the Milwaukee Police Department were on routine patrol in a marked squad car in the area of West Greenfield Avenue from South 11th Street to South 24th Street, an area known for high rates of violent crime, prostitution, and street level sales of illegal drugs.

¶5     The officers observed a vehicle that was parked on the street, but running. As the squad passed the vehicle, the officers saw two occupants inside: the driver, later identified as Wren; and a passenger, later identified as Marcel D. Walker. One of the officers noticed that Wren made "lingering eye contact" with him while the squad passed the vehicle. The officer also saw Walker "seemingly manipulating something in his lap." When Walker looked up and saw the squad car, the officer noted that he "gave a wide-eyed look of shock and surprise," which the police regularly refer to as the "oh no" look.

¶6     Following these observations, the officers conducted a check of the vehicle's license plate, and found that it was registered to an address that was outside of that area. The officers turned around and saw the occupants of the vehicle both exit the car and walk in different directions. The officers activated the squad's emergency lights in order to conduct "field interview[s]" with the vehicle's occupants.

¶7     Two of the officers made contact with Wren, and asked what he was doing in the area. Wren stated that he was picking up an employee who worked for him, pointing to a person who was standing on a nearby porch; however, he was unable to provide the officers with a name. The officers also asked about the owner of the vehicle and the passenger. After that exchange, Wren consented to being searched, and the officer found $300 cash in his pants pocket. Furthermore, the man on the porch subsequently told officers that he did not know Wren and did not work for Wren.

¶8     In the meantime, another officer made contact with Walker. The officer stated that Walker "appeared to be nervous," and "began to blade his body away" from the officer. Walker then pulled a baggie out of his pants pocket that

contained a green leafy substance, which the officer suspected was marijuana. Walker threw the baggie on the ground and fled on foot. Officers found Walker hiding in a residence nearby shortly thereafter.[1]

¶9      The officers then conducted a search of Wren's vehicle. They found a concealed compartment behind the dashboard which contained a digital scale and two baggies of substances that the officers believed were cocaine and heroin. A loaded pistol was also discovered in the compartment. Wren's fingerprints were later retrieved from the scale and the baggie of cocaine.

¶10      Wren filed a motion to suppress the evidence that was recovered from his vehicle on the grounds that the officers lacked reasonable suspicion to initially make the stop. Wren also sought to suppress statements that he made to officers in response to their questions when the officers first made contact with him, asserting that he was in custody at that point and had not been provided with the requisite *Miranda* warnings.

¶11      The trial court denied the motion to suppress.[2] The court found that the initial contact between the officers and Wren was a field interview, and that Wren was not seized, for purposes of applying the protections of the Fourth Amendment, until Walker dropped the baggie of marijuana and fled from the officer who was interviewing him. At that point, the court determined that the officers had reasonable suspicion to detain Wren and conduct the search of the vehicle. The court further found that at the time that Wren responded to the officers' questions

_____

[1] Walker was also charged as a result of this incident, but he is not part of this appeal.

[2] Wren's suppression hearing and jury trial were before the Honorable David C. Swanson, who we refer to as the trial court.

4

regarding his alleged employee, he was not yet in custody, and therefore ***Miranda*** warnings were not required.

¶12   The matter proceeded to a jury trial in April 2018. The jury convicted Wren on all three charges. The trial court sentenced Wren to a total of twenty years of imprisonment, bifurcated as ten years of initial confinement followed by ten years of extended supervision. This appeal follows.[3]

## DISCUSSION

¶13   On appeal, Wren argues that the trial court erred in denying his motions to suppress the evidence found in his vehicle and the statements he made in response to the initial questions posed to him by the officers. The review of a trial court's decision on a motion to suppress presents a mixed question of fact and law. ***State v. Eason***, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625. We will not reverse the trial court's findings of fact unless they are clearly erroneous; however, we review *de novo* the application of constitutional principles to those facts. ***Id.***

¶14   Specifically, Wren argues that his motions to suppress should have been granted because the police officers did not have reasonable suspicion of a crime when he was seized. "The Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect people from unreasonable searches and seizures." ***State v. Young***, 2006 WI 98, ¶18, 294 Wis. 2d 1, 717 N.W.2d 729 (footnotes omitted). An investigative stop is "technically a 'seizure' under the Fourth Amendment[.]" ***State v. Waldner***, 206

---

[3] Wren filed a postconviction motion alleging ineffective assistance of trial counsel. After an evidentiary hearing, held before the Honorable Danielle L. Shelton, Wren's motion was denied. Wren does not renew that claim on appeal, and thus we do not address it.

Wis. 2d 51, 55, 556 N.W.2d 681 (1996). However, "[n]ot all police-citizen encounters are seizures." *State v. Kelsey C.R.*, 2001 WI 54, ¶30, 243 Wis. 2d 422, 626 N.W.2d 777.

¶15 The issue here is when Wren was actually seized. The courts have determined that a seizure occurs "when an officer, by means of physical force or a show of authority, restrains a person's liberty." *Id.* (citations omitted). Under that test, it must be demonstrated that the citizen "yield[ed] to th[e] show of authority" by the police officer. *Id.* In other words, if "a reasonable person would have believed he was free to disregard the police presence and go about his business, there is no seizure and the Fourth Amendment does not apply." *Young*, 294 Wis. 2d 1, ¶18.

¶16 The State maintains that the trial court was correct in determining that Wren was not seized until Walker dropped the baggie of marijuana and fled, and there appears to be no disagreement from Wren that the officers had reasonable suspicion at that point to detain him. Instead, Wren contends his seizure occurred the moment the officers pulled up in their squad with the emergency lights activated. However, the use of the emergency lights alone is not enough to constitute a seizure. *See United States v. Clements*, 522 F.3d 790, 794-95 (7th Cir. 2008) (the driver of a suspiciously parked vehicle was not seized when officers pulled up with the squad's emergency lights activated, because the lights were "for identification and safety purposes").

¶17 Furthermore, we must also consider the questions posed to Wren when the officers made contact with him, and the subsequent consensual search. "[M]ere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). This is the case "as long as the police do not convey a

message that compliance with their requests is required." *Id.* at 435. However, the officers both testified that although they were "[j]ust talking" to Wren at that point, they did not consider him "free to leave" the scene during that "field interview." The State points out that the standard does not consider the officers' beliefs about Wren's freedom to leave the scene, but rather a reasonable person's belief. *See Young*, 294 Wis. 2d 1, ¶18. Yet, the officers' testimony, and the fact that they requested that Wren consent to a search, is telling as to the situation at that juncture of the incident. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) ("[e]xamples of circumstances that might indicate a seizure, even where the person did not attempt to leave," include such things as "the threatening presence of several officers" or "some physical touching of the person").

¶18    Nevertheless, even if we were to determine that Wren was seized at the point the officers made contact with him, we would conclude that the officers had reasonable suspicion to detain him at that time. "An investigatory stop is constitutional if the police have reasonable suspicion that a crime has been committed, is being committed, or is about to be committed." *Young*, 294 Wis. 2d 1, ¶20. "When determining if the standard of reasonable suspicion was met, those facts known to the officer at the time of the stop must be taken together with any rational inferences, and considered under the totality of the circumstances." *State v. Washington*, 2005 WI App 123, ¶16, 284 Wis. 2d 456, 700 N.W.2d 305.

¶19    Here, the officers had observed Wren's car parked with Walker in the passenger seat. They saw Walker "manipulating" something in his lap, and give the "oh no" look when he saw the squad passing by them. Wren and Walker then both exited the vehicle and began walking in different directions. We conclude that this conduct, along with rational inferences that can be made about this conduct, was sufficient for the officers to reasonably suspect that a crime had been committed,

was being committed, or was about to be committed.[4]  *See id.*; ***Young***, 294 Wis. 2d 1, ¶20.

¶20     We thus turn to the issue of whether the officers' questions to Wren when they made contact with him constitute a ***Miranda*** violation.  Before questioning a suspect in custody, officers must inform the person of the right to remain silent, the fact that any statements made may be used at trial, the right to have an attorney present during questioning, and the right to have an attorney appointed if the person cannot afford one.  *See id.*, 384 U.S. at 478-79.  A person is considered to be in custody within the meaning of ***Miranda*** when "a reasonable person would not feel free to terminate the interview and leave the scene." ***State v. Martin***, 2012 WI 96, ¶33, 343 Wis. 2d 278, 816 N.W.2d 270.  However, "courts often apply a 'totality of the circumstances' test to determine whether a suspect was in custody" pursuant to ***Miranda***.  ***Martin***, 343 Wis. 2d 278, ¶35.  "Under such a test, courts consider 'such factors as:  the defendant's freedom to leave; the purpose, place, and length of the interrogation; and the degree of restraint.'"  ***Id.*** (citation omitted).

¶21     We conclude that Wren was not in custody within the meaning of ***Miranda*** at the time the officers initially posed questions to him upon making contact with him.  While Wren's ability to leave the scene is in question, as discussed above, the purpose of the officers' questions at that point was to investigate a suspicious situation; the place was a public sidewalk; and there was no physical restraint of Wren, as he was not handcuffed at that point. Additionally, the length of the questioning—just three questions, about why he was in that

---

[4]  We will affirm the trial court "if the court reached the correct result, even if we employ different reasoning."  ***State v. Thames***, 2005 WI App 101, ¶10, 281 Wis. 2d 772, 700 N.W.2d 285.

neighborhood, whether he owned the vehicle, and who his passenger was—was fairly short, limited by the fact that Walker fled shortly after the officers made contact with them. These initial questions to Wren did not invoke the protections of *Miranda*—namely, the Fifth Amendment right against self-incrimination. *See Martin*, 343 Wis. 2d 278, ¶¶30-31. Thus, there was no *Miranda* violation.

¶22 Therefore, because the officers had reasonable suspicion to stop Wren, and no *Miranda* violation occurred, the trial court did not err in denying Wren's motions to suppress. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20)