COURT OF APPEALS
DECISION
DATED AND FILED

May 2, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP416-CR**

Cir. Ct. No. **2018CF610**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JAMIE LEE DUVAL,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County: WILLIAM M. ATKINSON and TIMOTHY A. HINKFUSS, Judges. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jamie Duval appeals a judgment, entered following a no-contest plea, convicting him of operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood, as a fourth offense and as a repeater. Duval also appeals an order denying his postconviction motion. Duval contends that the circuit court erred by granting the State's motion for reconsideration of the court's original decision granting Duval's motion to suppress. We conclude that the arresting officer had reasonable suspicion that Duval was operating a motor vehicle either while unlawfully under the influence of an intoxicant or with a detectable amount of a restricted controlled substance in his blood so as to extend the traffic stop that led to Duval's arrest. Accordingly, the court correctly granted the State's motion for reconsideration, denied Duval's motion to suppress, and denied Duval's postconviction motion. We affirm.

## BACKGROUND

¶2 After Duval's arrest following a traffic stop in April 2018, the State initially charged Duval with one count of fourth-offense operating a motor vehicle while intoxicated (OWI) under WIS. STAT. § 346.63(1)(a) (2021-22),[1] and one count of operating a motor vehicle while revoked, both as a repeater. Duval was bound over for trial following a preliminary hearing, during which the State submitted evidence that at the time of the stop Duval's license was revoked, that he had a .02 blood alcohol concentration (BAC) restriction, and that he had been convicted of three prior OWIs, the most recent being in January 2010. Thereafter, Duval filed a motion to suppress "anything obtained as a result of the unlawful

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

request for [Duval] to submit to field sobriety tests and [the] unlawful arrest of [Duval]," arguing that the arresting officer did not have reasonable suspicion that Duval was driving while impaired.

¶3      The arresting officer, De Pere Police Officer Alicia Bagley, was the sole witness called by the State at the suppression hearing. Bagley testified that she was on routine patrol at around 4:00 a.m. on the day of the stop, when she observed a vehicle pull out from a residential driveway and onto Main Avenue, a city street. Using her squad car computer, Bagley ran the vehicle's license plate and determined that the vehicle's registration was suspended for parking violations. Due to the vehicle's suspended registration, Bagley initiated a traffic stop. After the vehicle stopped, Bagley pulled her squad car behind it, exited her squad car, and approached the vehicle's driver's side window.

¶4      Upon approaching the driver's side window, Bagley observed a male driver, later determined to be Duval, and a female passenger, later determined to be the owner of the vehicle. Bagley testified that she "could immediately smell an odor of intoxicants coming from the vehicle," but she could not determine the source of the odor and did not smell alcohol on Duval's breath while talking to him. According to Bagley, "The female passenger [admitted] to drinking, and I believe the driver admitted to having one beer" after he arrived at the residence on Main Avenue.

¶5      Bagley also testified that during the traffic stop, she noted Duval's "pupils appeared to be small given the lighting conditions." Bagley, a trained drug recognition expert (DRE) since 2011, testified that small pupil size is "one of the signs that we're trained to observe." According to Bagley, "When you are driving in darkness, your pupils should be on the larger side of average. And when I was

speaking with [Duval], his pupils were very small and constricted which would not be the norm of somebody that would be driving at night." Bagley also testified that she

> did not see much reaction with my flashlight when I would take my flashlight and move it from [Duval's] face down to the ground or in the car. There wasn't much of a change, which is something that I would also note as a sign or a symptom of drug impairment.

According to Bagley, she would have expected Duval's eyes to "clamp down." Based on her observations of Duval, Bagley determined that "there was possibly some kind of drug use going on." After making contact with Duval and the passenger of the vehicle, Bagley testified that she "ran [Duval's] information" and was "able to see [Duval's] drug history." At the suppression hearing, Bagley could not, however, remember any details she learned from that information regarding Duval's criminal drug history.

¶6      Bagley testified that she then asked Duval to step outside of the vehicle to conduct standard field sobriety tests (SFSTs). In support of Bagley's decision to conduct SFSTs, she cited the odor of intoxicants, Duval's admission of drinking, Duval's irregular pupil size, and Duval's known drug history. After conducting the SFSTs, Bagley believed that Duval was impaired. Bagley then instructed Duval to take a preliminary breath test, with which Duval complied, and he "blew zeros."[2] Bagley arrested Duval, and he consented to a blood draw. After the blood draw, Bagley conducted a DRE "12-step process" test on Duval, which, according to Bagley, indicated further impairment. Testing on the blood sample

---

[2] It is unclear from the record whether Bagley had Duval take a preliminary breath test before or after his arrest.

4

obtained from Duval showed the presence of delta-9-tetrahydrocannabinol (THC), a restricted controlled substance pursuant to WIS. STAT. § 340.01(50m)(e).

¶7    The circuit court[3] granted Duval's motion to suppress and it suppressed all evidence obtained as a result of the SFSTs, Duval's arrest, and Duval's blood draw. In support of its decision, the court concluded that Duval's pupil size, by itself, was not enough to constitute reasonable suspicion. Regarding Bagley's reliance on Duval's drug history, the court stated:

> And I might be more likely [to deny the motion to suppress] if there was [testimony] here [of] a significant drug history like, for instance, this person was on probation for drugs and had been convicted in 2002, another conviction in 2008, put on drug conviction in 2013, you know, she pulls up a rap sheet where this guy is pretty much a known drug user. But we didn't get that. We just had the drug history. And then you've just got the pupil size.

The court also reasoned that Duval showed no signs of impaired driving or signs of impairment generally.

¶8    The State filed a motion for reconsideration, requesting that the circuit court reopen testimony for "Bagley on this limited issue—was she aware, prior to asking [Duval] to step from his vehicle, that [Duval] had three prior OWI convictions and was subject to a .02 [BAC] standard."[4] Alternatively, the State asked the court to vacate its earlier decision granting Duval's motion to suppress

---

[3] The Honorable William M. Atkinson presided over the trial phase of Duval's case. The Honorable Timothy A. Hinkfuss presided over Duval's postconviction motion.

[4] The day after it filed the motion for reconsideration, the State filed an amended Information changing the fourth-offense OWI charge under WIS. STAT. § 346.63(1)(a) to a charge of operating a motor vehicle with a detectable amount of a restricted controlled substance in the blood, as a fourth offense, under § 346.63(1)(am).

and to enter an order denying the motion based on the court's misunderstanding that Bagley needed reasonable suspicion of *impairment* to extend the traffic stop. Specifically, the State argued that under WIS. STAT. § 346.63(1)(am), Bagley only needed reasonable suspicion that Duval had "a detectable amount of a restricted controlled substance" in his blood.

¶9     The circuit court did not reopen testimony for the State's motion for reconsideration. Instead, the court granted the State's motion for reconsideration on its face, vacated its prior decision granting Duval's motion to suppress, and entered an order denying the motion to suppress. Without explaining its reasoning, the court stated, "I've reviewed the transcript, and I'm satisfied it was incorrectly decided that day of the hearing."

¶10     Later, Duval entered into a global plea agreement encompassing this case and a number of other cases. In this case, Duval entered a no-contest plea to Count One, the charge of operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood, as a fourth offense and as a repeater. Count Two was dismissed and read in. After sentencing, Duval filed a postconviction motion requesting, as pertinent to this appeal, that the circuit court reverse its decision granting the State's motion for reconsideration and suppress all evidence derived from the stop because Bagley did not have reasonable suspicion to extend the traffic stop based upon Duval's impairment due to drugs or alcohol. The court held a hearing on the motion, but no new testimony was taken.

¶11     In a written decision, the circuit court denied Duval's postconviction motion. The court found that Bagley suspected both that Duval was under the influence of a restricted controlled substance and that he was under the influence of alcohol. The court also noted that Bagley was "not an untrained officer." The

court further found that Duval was subject to a .02 BAC restriction and that "[w]hat is important is that the Court get the decision 'right,' not whether an officer testified to a .02 level. When [Duval] was pulled over, it became a matter of record as to how many prior convictions he did have." Duval now appeals.[5]

## DISCUSSION

¶12    Whether a defendant's rights under the Fourth Amendment have been violated is a question of constitutional fact. *State v. Hogan*, 2015 WI 76, ¶32, 364 Wis. 2d 167, 868 N.W.2d 124. "Resolving questions of constitutional fact is a two-step process. We first uphold the circuit court's findings of historical fact unless they are clearly erroneous. We then independently apply constitutional principles to those facts." *Id.* (citations omitted). The State bears the burden at a suppression hearing to prove that a warrantless seizure complied with the Fourth Amendment. *State v. Blatterman*, 2015 WI 46, ¶17, 362 Wis. 2d 138, 864 N.W.2d 26.

¶13    "The right to be secure against unreasonable searches and seizures is protected by both" the United States Constitution and the Wisconsin Constitution. *State v. Dearborn*, 2010 WI 84, ¶14, 327 Wis. 2d 252, 786 N.W.2d 97. A traffic stop is a seizure within the meaning of both constitutions, and reasonable suspicion that a driver is violating a traffic law is sufficient to initiate a stop. *State v. Floyd*, 2017 WI 78, ¶20, 377 Wis. 2d 394, 898 N.W.2d 560.

---

[5] Duval did not challenge the constitutionality of his arrest after the SFSTs, nor does he make that challenge on appeal. We will therefore assume, without deciding, that probable cause existed for Duval's warrantless arrest after the SFSTs. The only question on appeal is whether Bagley had reasonable suspicion to extend the traffic stop in order to perform SFSTs.

¶14 "Reasonable suspicion requires that '[an] officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion of the stop.'" *Id.* (citation omitted). "While [reasonable suspicion] is a low bar," *State v. Genous*, 2021 WI 50, ¶8, 397 Wis. 2d 293, 961 N.W.2d 41, an officer's "inchoate and unparticularized suspicion or 'hunch'" will not suffice, *State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634 (citation omitted). "Yet 'officers are not required to rule out the possibility of innocent behavior before initiating a brief stop.' The question is, 'What would a reasonable police officer reasonably suspect in light of his or her training and experience?'" *Genous*, 397 Wis. 2d 293, ¶8 (citations omitted).

¶15 Traffic stops "may last no longer than required to address the circumstances that make them necessary." *Floyd*, 377 Wis. 2d 394, ¶21. "Authority for the seizure thus ends when tasks tied to the traffic infraction are— or reasonably should have been—completed." *Id.* (citation omitted). An officer may, however, "expand the scope of the inquiry … to investigate 'additional suspicious factors [that] come to the officer's attention.'" *Hogan*, 364 Wis. 2d 167, ¶35 (citation omitted; second alteration in original). The officer must be able to point to additional reasonable suspicion of unlawful activity if the traffic stop is extended by a period of time longer than would have been necessary to complete the original traffic stop. *Id.* "In this regard, the legal extension of a traffic stop is essentially a *Terry*[6] investigatory stop." *Hogan*, 364 Wis. 2d 167, ¶35. "The

---

[6] *Terry v. Ohio*, 392 U.S. 1 (1968).

reasonableness of a stop is determined based on the totality of the facts and circumstances." *Post*, 301 Wis. 2d 1, ¶13.

## I. Factors present for reasonable suspicion to extend the traffic stop

¶16 As the circuit court found in its decision denying Duval's postconviction motion, Bagley suspected both that Duval was under the influence of a restricted controlled substance and that he was under the influence of alcohol.[7] This finding is not clearly erroneous. In support of her decision to conduct SFSTs, Bagley testified that she noticed an odor of intoxicants emanating from the vehicle; that Duval had admitted to drinking; that Duval's pupils were behaving irregularly, which Bagley knew from her training as a DRE could be a sign of drug impairment; and that Duval had a known drug history. Therefore, the issue is whether Bagley had reasonable suspicion to extend the traffic stop for SFSTs based on the fact that Duval was *either* operating while under the influence of an intoxicant or operating with a detectable amount of a restricted controlled substance in his blood (or both).[8]

¶17 Often, as is the case here, the legality of an officer's extension of a traffic stop will turn on the presence of numerous factors. *See Hogan*, 364

---

[7] The factual findings on which we rely are largely limited to the circuit court's written decision denying Duval's postconviction motion because the court did not make a record of the reasons that it originally granted the State's motion for reconsideration.

[8] The elements of an OWI charge, in violation of WIS. STAT. § 346.63(1)(a), are: (1) the defendant operated a motor vehicle on a highway; and (2) the defendant was under the influence of an intoxicant at the time. WIS JI—CRIMINAL 2663 (2020). The elements of operating a motor vehicle with a detectable amount of a restricted controlled substance in the blood, contrary to § 346.63(1)(am) are: (1) the defendant operated a motor vehicle on a highway; and (2) the defendant had a detectable amount of a restricted controlled substance in his or her blood at the time. WIS JI—CRIMINAL 2664B (2021).

Wis. 2d 167, ¶37. Here, the State relies on a number of factors that it contends were present when Bagley made the traffic stop: (1) the stop occurred at 4:00 a.m.[9]; (2) Bagley was a trained DRE who recognized that Duval's pupils were exhibiting behavior that could likely be attributed to drug use; (3) Bagley was aware of some type of drug history attributable to Duval, even though she could not recall exactly what that history entailed; (4) Duval admitted to consuming alcohol; and (5) Bagley noted an odor of intoxicants coming from the vehicle. According to the State, these factors, in the aggregate gave rise to reasonable suspicion of Duval unlawfully operating a motor vehicle in violation of WIS. STAT. § 346.63 in order to extend the traffic stop.

A. *The fact that Bagley, a trained DRE, considered Duval's pupils smaller than normal due to suspected drug use weighs in favor of Bagley having reasonable suspicion to extend the traffic stop.*

¶18    Bagley testified that she had been a DRE since 2011 and a DRE instructor since 2013. According to Bagley, a DRE is "trained to detect the signs and symptoms of various use and abuse drugs, whether they are prescription medications or illegal medications." As a DRE, Bagley had conducted roughly eighty drug recognition tests in the field. As outlined previously, Bagley testified that after approaching the vehicle, she noticed that Duval's "pupils appeared to be

---

[9] Duval does not dispute the fact that the time of the traffic stop in this case lends "some further credence" to Bagley's suspicion that Duval was impaired. *See **State v. Post***, 2007 WI 60, ¶36, 301 Wis. 2d 1, 733 N.W.2d 634 (the fact that traffic stop occurred at 9:30 p.m. "lend[ed] some further credence" to officer's suspicion that driver was intoxicated); *see also **State v. Morgan***, 197 Wis. 2d 200, 214, 539 N.W.2d 887 (1995) ("We hold that the time of night—four a.m.—may be considered in determining the legality of the pat-down search of [the defendant]."). We therefore consider this fact in the reasonableness analysis and conclude that it weighs in favor of Bagley having reasonable suspicion to extend the traffic stop.

small given the lighting conditions" and did not react to her flashlight, which led her to conclude that "there was possibly some kind of drug use going on."

¶19 Citing the Drug Evaluation and Classification (DEC) Program procedures, Duval argues that a DRE is not trained to detect pre-arrest impairment and that we should not weigh Duval's pupil's behavior in our reasonableness analysis.[10] DEC procedures

> are not a field test or a pre-arrest investigative tool. It is highly unlikely that they could be conducted with adequate care in an outdoors, scene-of-investigation setting. In any event, they are not designed to provide probable cause for a subject's arrest. Rather, they are a post-arrest investigative tool, intended for application to arrestees for whom there is at least some articulable suspicion of drug use or drug impairment.

NATIONAL HIGHWAY TRAFFIC SAFETY ADMIN., U.S. DEPT. OF TRANSP., DRUG RECOGNITION EXPERT COURSE, INSTRUCTOR GUIDE, 2 (2018) (formatting altered).[11] According to Duval, a DRE "does not have special abilities to assess pupil size" unless he or she is in a controlled environment as outlined in the DEC procedures.

¶20 Duval's citation to the DEC procedures is taken out of context. The DEC procedures refer to a twelve-step process, which is intended to be used after

---

[10] According to Duval, this case is a good illustration of the fact that DREs are not trained at pre-arrest detection of drug use because THC, as found in Duval's blood, does not cause pupil shrinking but it can cause the opposite result—dilated pupils. We conclude that this distinction does not matter for purposes of reasonable suspicion. Bagley's reliance on Duval's pupil size was not an "inchoate and unparticularized suspicion or 'hunch,'" even if Duval ultimately had THC, as opposed to a drug that constricts pupil size, in his system. *See Post*, 301 Wis. 2d 1, ¶10 (citation omitted).

[11] https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/dre_7-day_instructor_guide-tag.pdf (last visited April 27, 2023).

11

an individual is arrested. *See id.*; **State v. Chitwood**, 2016 WI App 36, ¶¶31-50, 369 Wis. 2d 132, 879 N.W.2d 786. The fact that Bagley noticed that Duval's pupils were small and constricted prior to conducting the twelve-step process does not alter our reasonable suspicion analysis. What is important for our purposes is that, at the time of the traffic stop, Bagley was a trained DRE and had conducted roughly eighty DRE field tests. *See* **State v. Adell**, 2021 WI App 72, ¶20, 399 Wis. 2d 399, 966 N.W.2d 115 (officer training and experience is a factor in reasonable suspicion analysis). Part of that training was observing miosis, or "abnormally small pupil[s], i.e., constricted." NATIONAL HIGHWAY TRAFFIC SAFETY ADMIN., U.S. DEPT. OF TRANSP., DRUG RECOGNITION EXPERT COURSE, INSTRUCTOR GUIDE, Session 5, 30-31 (2018). We have repeatedly rejected the assertion that an officer's failure to strictly comply with training related to detecting intoxication or impairment equates to the officer lacking reasonable suspicion or probable cause. *See, e.g.*, **City of West Bend v. Wilkens**, 2005 WI App 36, ¶¶12-16, 22, 278 Wis. 2d 643, 693 N.W.2d 324. While adherence to DEC procedures may be relevant for the admissibility of a DRE's testimony, *see* **Chitwood**, 369 Wis. 2d 132, ¶¶28-50 (admissibility of DRE testimony governed by WIS. STAT. § 907.02), nonadherence does not automatically equate to Bagley lacking reasonable suspicion that Duval was driving while either impaired or with a restricted controlled substance in his blood.

¶21 Duval also attempts to discredit Bagley's observations of his pupil size because "the lighting conditions were bright, making the caveat 'given the lighting conditions' meaningless." Duval cites Bagley's testimony at the suppression hearing that the extra spotlight on her squad car was shining on the vehicle Duval was driving. We again disagree with Duval. While the bright light may have caused Duval's pupils to shrink, "officers are not required to rule out the

possibility of innocent behavior." *See Genous*, 397 Wis. 2d 293, ¶8 (citation omitted). We also note that Bagley testified at the suppression hearing that Duval's pupils did not "clamp down," as she would have expected, when her flashlight was pointing into Duval's eyes. Her testimony further refutes Duval's claim regarding the effect lighting had on his eyes during the traffic stop.

¶22 Furthermore, Duval faults Bagley for not inquiring about whether he had taken any prescription medication, which could have affected his pupil size, arguing that "Bagley admitted that some narcotics are prescribed and she did not ask [Duval], prior to exiting the car, whether he had a prescription or whether he took any drugs." Again, while there could be innocent explanations for Duval's pupil size, including a prescribed restricted controlled substance, "officers are not required to rule out the possibility of innocent behavior." *See id.* (citation omitted).

> B. *The fact that Bagley was aware of some type of drug history attributable to Duval, even though she could not recall exactly what that history entailed, weighs in favor of Bagley having reasonable suspicion to extend the traffic stop.*

¶23 At the suppression hearing, Bagley testified that she "ran [Duval's] information" during the traffic stop and was "able to see [Duval's] drug history," although Bagley could not recall the exact details of what that history entailed. Duval argues that his purported drug history "is a mystery and adds no value to the totality of the circumstances analysis" because "Bagley was not clear on the specifics of what she saw on her computer. She testified that she did not know what that history was or whether it involved a dismissed case." The circuit court did not make any factual findings regarding Duval's drug history in its decision granting the State's motion for reconsideration or in its decision denying Duval's postconviction motion.

¶24    Despite Bagley's inability to recall the exact type or dates of Duval's drug history, she was able to recall that she noted that Duval had a drug history. In addition, Bagley suspected Duval of being under the influence of a drug, providing the necessary link for Duval's criminal history to add to sufficient reasonable suspicion.    An individual's criminal history can contribute to reasonable suspicion where the criminal history has a link to an officer's observation-based suspicions. *See State v. Buchanan*, 2011 WI 49, ¶13, 334 Wis. 2d 379, 799 N.W.2d 775 (criminal history of violent crimes along with officer's suspicions that suspect was armed supported *Terry* pat down of driver).

*C. The odor of intoxicants emanating from the vehicle and Duval's admission to consuming alcohol weigh in favor of Bagley having reasonable suspicion to extend the traffic stop.*

¶25    It is undisputed that Duval was subject to a .02 BAC restriction at the time of the traffic stop.  Both parties also agree that Bagley did not specifically testify about the restriction.  Duval argues that because Bagley did not have knowledge of Duval's .02 BAC restriction, and because "[r]easonable suspicion must be based upon facts known to the officer," we cannot consider the restriction in our analysis.  While the State "acknowledges that the prosecutor did not ask [Bagley] about her knowledge of Duval's [.02 BAC restriction] at the suppression hearing," it contends that the determination of whether an officer had reasonable suspicion is based on what a reasonable officer would have known at the time of the extension of the traffic stop, not what Bagley actually knew.

¶26    We agree with Duval that whether an officer has reasonable suspicion depends on the "specific and articulable facts" the officer personally knows at the time reasonable suspicion is required. *See State v. Washington*, 2005 WI App 123, ¶16, 284 Wis. 2d 456, 700 N.W.2d 305 ("When determining if

14

the standard of reasonable suspicion was met, those facts known to the officer at the time of the stop must be taken together with any rational inferences, and considered under the totality of the circumstances."). It is not enough, as the circuit court stated, that Duval's .02 BAC restriction existed—Bagley needed knowledge of the restriction for us to factor it into our reasonable suspicion analysis.

¶27 Nonetheless, even concluding that Bagley did not have knowledge of Duval's .02 BAC restriction, Duval still admitted to consuming alcohol, *see State v. Waldner*, 206 Wis. 2d 51, 60, 556 N.W.2d 681 (1996) ("Police officers are not required to rule out the possibility of innocent behavior before initiating a brief stop."),[12] and Bagley noted an odor of intoxicants emanating from the vehicle, *see State v. Colstad*, 2003 WI App 25, ¶¶20-21, 260 Wis. 2d 406, 659 N.W.2d 394 (odor of alcohol coming from car added to reasonable suspicion).

¶28 Duval relies on *County of Sauk v. Leon*, No. 2010AP1593, unpublished slip op. (WI App Nov. 24, 2010),[13] for the proposition that "[t]he mere odor of alcohol and an admission of consuming one beer is *not sufficient* for reasonable suspicion." But in *Leon*, the county relied *only* on the defendant's admission of limited drinking and the odor of intoxicants. *See id.*, ¶28. As we

---

[12] Duval points us to the fact that Bagley believed that he only had one drink. Specifically, he relies on Bagley's testimony at the suppression hearing that she believed Duval's statement that he had only had one beer that evening was the truth "[t]o the best of [her] knowledge." This fact is not dispositive. It is possible that Bagley believed Duval consumed only one beer and still thought that he was intoxicated due to Bagley's suspicions about Duval's drug use.

[13] An unpublished opinion authored by a single judge under WIS. STAT. § 752.31(2) and issued on or after July 1, 2009, may be cited for its persuasive value. WIS. STAT. RULE 809.23(3)(b).

have explained, there are a number of other factors in this case that support a finding of reasonable suspicion. In analyzing whether reasonable suspicion existed, we may consider Duval's admission to consuming alcohol and the odor of intoxicants emanating from the vehicle, along with those other factors.

## II. Bagley had reasonable suspicion to extend the traffic stop.

¶29    Duval attempts to compare the traffic stop in this case to the traffic stop in ***Hogan***, where our supreme court concluded that the State failed to meet its burden to show that an officer had reasonable suspicion to extend a stop for SFSTs.    *See* ***Hogan***, 364 Wis. 2d 167, ¶43.    In ***Hogan***, the officer stopped a vehicle after observing that the driver not wearing a seat belt.    *Id.*, ¶11.    "As soon as [the officer] began speaking with [the driver], he noticed that [the driver] was 'very nervous,' 'real nervous,' and 'shaking real bad' with upper body tremors. He also noticed that [the driver's] 'pupils were restricted,' which he believed was 'an indicator of drug use.'"    *Id.*, ¶13.    Another officer arrived, who informed the first officer that the driver had "961 issues" and that the second officer had received tips that the driver made his own methamphetamine.    *Id.*, ¶16. Afterward, the first officer asked the driver to step outside of the vehicle and had the driver perform SFSTs.    *Id.*, ¶18.    The first officer acknowledged that he was not a DRE but he "said he based his observations on his 12-1/2 years['] experience as a deputy and his frequent review of a 'pupilometer,' which he described as 'a little card that has different size black marks' which are 'measured in millimeters.'"    *Id.*, ¶13.    Only the first officer testified at the suppression hearing. *See id.*, ¶40.    On appeal, our supreme court concluded it "believe[d] the State could have made a valid case that [the first officer] had reasonable suspicion to pursue field sobriety tests with" the driver, but that it had failed to do so on the record before the court.    *Id.*, ¶43.

16

¶30    The record before us demonstrates that the State met its burden to show that Bagley had reasonable suspicion to extend the stop. As an initial matter, unlike the first officer in *Hogan*, Bagley was a trained DRE at the time of the stop and had knowledge of how pupil size can relate to current drug use. In *Hogan*,

> the circuit court put no stock in the [first officer's] testimony about restricted pupils as a factor in establishing reasonable suspicion. The [officer] did not have definitive information *at any point* on how drug use might affect pupil size. He referred to his familiarity with a pupilometer card but he did not bring the card to substantiate or supplement his testimony.

*Id.*, ¶48 (footnote omitted). Furthermore, Bagley had knowledge of Duval's drug history, which she testified to receiving once she ran Duval's name through her squad car computer. Conversely, in *Hogan*, the second officer did not testify as to where he obtained the tip that the driver made his own methamphetamine, nor did the second officer testify as to how he knew that the driver had "961 issues." The supreme court reasoned that "[i]f either [of the officers] had been shown to know of [the driver's] criminal record, which included three felony convictions and a drug conviction as well as his probationary status, the case for reasonable suspicion would have been greatly strengthened." *Id.*, ¶52. Additionally, as the circuit court found in this case, Bagley had concerns about whether Duval was intoxicated, unlike in *Hogan*, where "[t]here was no evidence and no suspicion that [the driver] was driving under the influence of alcohol." *See id.*, ¶45.

¶31    Applying *Hogan* here, "It follows that the legality of the extension of the traffic stop … turns on the presence of factors which, in the aggregate, amount to reasonable suspicion that [Duval] committed a crime the investigation of which would be furthered by [his] performance of field sobriety tests." *See id.*, ¶37. While each of the above factors, by themselves, may not amount to

17

reasonable suspicion that Duval was either operating while under the influence of an intoxicant or operating with a detectable amount of a restricted controlled substance in his blood, when considered in total, Bagley had reasonable suspicion to extend the traffic stop. "Although officers sometimes will be confronted with behavior that has a possible innocent explanation, a combination of behaviors—all of which may provide the possibility of innocent explanation—can give rise to reasonable suspicion." *Id.*, ¶36.

¶32 For the reasons explained above, we conclude that the circuit court properly denied Duval's motion to suppress on reconsideration and, accordingly, properly denied his postconviction motion. Considering the factors discussed, Bagley had reasonable suspicion to extend the traffic stop for SFSTs. We therefore affirm Duval's judgment of conviction for operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood, as a fourth offense and as a repeater.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.